EXHIBIT .A
SUPERIOR Ct. "DTSC"

EXHIBIT A

EXHIBIT A

EXHIBIT A

**FILED**

DEC 16 2002

KIRI TORRE
Chief Executive Officer
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

In re

    EDWARD E. MOTLEY,

On Habeas Corpus

No.: 155474
<u>ORDER TO SHOW CAUSE</u>

EDWARD E. MOTLEY has presented this Court with a petition for a writ of habeas corpus in which he claims that his trial counsel was ineffective for failing to adequately investigate the facts of his case and failed to present exculpatory evidence; his trial counsel was ineffective by failing to request a constitutionally acceptable line up before the preliminary hearing; his appellate counsel was ineffective for failing to argue on appeal that there was insufficient evidence for his conviction on two counts of penetration by a foreign object; and that the evidence was insufficient for his conviction.

Having reviewed the allegations, this Court makes a preliminary finding that Petitioner has stated a *prima facie* case for relief on certain grounds. "That determination, it must be emphasized, is truly 'preliminary': it is only initial and tentative, and not final and binding." (<u>In re Sassounian</u> (1995) 9 Cal.4th 535, 547.)

1

1    Petitioner was convicted of Penal Code §§ 209(b) (kidnaping for

2  robbery) with a 12022.5(a) enhancement (allegation of personal use of

3  a firearm); two counts of 288a(c) (forcible oral copulation); and two

4  counts of 289(a) (penetration by a foreign object).

5    Petitioner's convictions stemmed from a March 10, 1992 incident in

6  which the victim was kidnaped from her Volkswagen Bug while in the

7  parking lot at Valley Fair Shopping Center in San Jose. After the victim

8  got into her vehicle, a man, with a black revolver and a gold-studded

9  earring in his left ear, swung open her driver's side door and ordered

10  her to move over. A second man, named Ricky Nelson, appeared at the

11  passenger door and ordered the victim into the backseat. The man with

12  the black revolver got into the front seat of the Volkswagen and began

13  driving it, while Nelson sat in the passenger seat and the victim in the

14  backseat. The man driving the Volkswagen then drove up to a parked Dodge

15  Colt which contained a third man. The three men and the victim then

16  entered the Colt and drove off. After this point, the victim testified

17  that she never saw the black revolver or any other firearm wielded by

18  the three men. The sexual assaults and robbery then occurred

19  subsequently thereafter. All three men were identified by the victim as

20  African-American. At trial, it was virtually undisputed that the

21  identity of these three men were Petitioner, Thomas Watkins (aka

22  "City"), and Ricky Nelson.

23    Before Petitioner's trial, Nelson plead guilty to the offense in

24  juvenile court. *Thomas Watkins remained at large and was never

25  apprehended for the instant offense.*

26    However, there was a dispute as to which man originally accosted

27  the victim with the black revolver. Through his own admission,

28  fingerprint evidence found on the Volkswagen, and the testimony of the

2

1  victim, it was virtually certain that Ricky Nelson was the person who
2  accosted the victim from her passenger door and rode in the front
3  passenger seat of the Volkswagen. The dispute, consequently, centered
4  around whether Watkins or Petitioner was the person with the gold
5  earring who accosted the victim with the black revolver and drove her
6  Volkswagen.

7      At trial, evidence was adduced that the police were able to lift
8  28 latent fingerprints from the Volkswagen. One of these prints, found
9  on the Volkswagen's passenger door, matched a thumb print of Ricky
10  Nelson. However, none of the other prints found in the Volkswagen
11  matched Petitioner's prints. In addition, the police never compared the
12  prints found in the Volkswagen with any known prints of Watkins.

13      Furthermore, while the victim testified that the man with the black
14  revolver had a gold-studded earring in his left ear, at trial, it was
15  stipulated that Petitioner's ears were not pierced and that, when
16  Petitioner was arrested on the day of the crime, he had no earrings. On
17  the other hand, Nelson did wear a gold earring on his left ear.

18      At trial, the victim testified that Petitioner was the man who
19  accosted her with a black revolver and drove her Volkswagen. Despite the
20  fact that Petitioner's ears were not pierced, the victim was sure that
21  the man who sexually assaulted her (Petitioner) was the same man who
22  drove her Volkswagen. However, the victim mistakenly identified a
23  photograph of Ricky Nelson as being a photograph of Petitioner.
24  Moreover, the victim was only shown sketches of Watkins, whom she
25  identified as the driver of the Dodge Colt, not photographs of Watkins.

26      Nevertheless, the victim testified that the man with the black
27  revolver and the man who sexually assaulted her was the same person. She
28  also testified that he wore a baseball cap, Raiders jacket, and blue

3

1  jeans with suede patches from thigh to knee. When Petitioner was

2  arrested on the day of the crime, he was wearing this clothing.

3      In addition to the sexual assault counts, Petitioner was convicted

4  as a principal in kidnaping for robbery along with a personal use of a

5  firearm enhancement on August 21, 1992. Appellant's judgment before the

6  Court of Appeals was partially reversed[1], but otherwise affirmed on June

7  7, 1994.

8  1. Laches

9      The "unjustified delay in presenting" claims by way of habeas

10  corpus "bars consideration of the merits of the petition." (In re Clark

11  (1993) 5 Cal.4th 750, 759.)

12      In the instant case, over eight years has elapsed since

13  Petitioner's Court of Appeals decision. Petitioner justifies this delay

14  in a supplement, filed on October 16, 2002, to his original petition,

15  filed on July 22, 2002.

16      In his supplement, Petitioner claims that his appellate attorney,

17  following the disposition of his appeal, incorrectly advised him

18  regarding a petition for review and did not inform him about his habeas

19  corpus rights. As a result, Petitioner claims that he was unaware that

20  he had any other method for obtaining relief other than a petition for

21  review by the California Supreme Court. In addition, Petitioner states

22  that he was unaware of the law regarding "time constraints" and that he

23  had inadequate access to the prison law library due to numerous lockdown

24  situations.

25      While Petitioner can point to no authority indicating a

26  _____

27      [1] The Court of Appeals found that instructional error caused the jury to mistakenly convict Petitioner of

28  four additional personal use of a firearm allegations. The Court of Appeals upheld the counts relating to robbery for kidnapping, one enhancement of personal use of a firearm, and the counts relating to the sexual assaults.

4

1    responsibility of an appellate attorney to advise an appellant about the

2    right to file a petition for habeas corpus, Petitioner's claims do raise

3    the issue that Petitioner may be innocent of at least one of the crimes

4    in the instant matter. Accordingly, even if Petitioner has not

5    adequately justified the delay in seeking relief, Petitioner's claim

6    will be entertained on its merits. (In re Robbins (1998) 18 Cal.4th 770,

7    780.)

8    **2. Claims Regarding Pre-trial Evans Lineup and Ineffective Assistance
     of Appellate Counsel.**

9

10       Petitioner's claims regarding his trial counsel's alleged failure

11   to request a lineup, pursuant to Evans v. Superior Court (1974) 11

12   Cal.3d 617, and his claim that his appellate counsel was ineffective

13   have no merit.

14       Regarding his trial counsel's alleged failure to request a pre-

15   trial Evans line-up, Petitioner fails to demonstrate prejudice.

16   Petitioner never denied being present with Nelson, Watkins, nor the

17   victim on the date of the offense. The victim identified Petitioner as

18   one of the participants. Petitioner does not explain how a pre-trial

19   lineup may have changed the victim's identification of him as the person

20   who accosted her with a black revolver at her Volkswagen. In addition,

21   it is likely that Petitioner's trial counsel made a reasonable tactical

22   decision to not request an Evans lineup because of the very real concern

23   that the victim would have actually had the opportunity to successfully

24   identify Petitioner as one of her assailants. (See People v. Blomdahl

25   (1993) 16 Cal.App.4th 1242.)

26       Regarding Petitioner's claim that his appellate counsel was

27   ineffective for failing to argue that there was insufficient evidence

28   for the two counts of penetration by a foreign object, the victim's

5

1　testimony was more than sufficient to sustain the conviction. Petitioner

2　admitted to engaging in sexual acts with the victim. In addition, while

3　the examining nurse did not find any physical evidence of penetration

4　of the victim's vagina, the expert did testify that the lack of such

5　evidence does not necessarily indicate that no penetration took place.

6　Therefore, other than Petitioner's claim to the contrary, there was no

7　evidence that directly contradicted the evidence for these two counts.

8　As a result, Petitioner's appellate counsel was not ineffective for

9　failing to raise this issue on appeal.

10　**3. Ineffective Assistance of Trial Counsel in Investigating the Case and Sufficiency of the Evidence.**

11

12　　Petitioner's remaining claims on habeas focus on two issues. First,

13　Petitioner claims that his trial counsel was ineffective for failing to

14　compare the unidentified latent fingerprints found in the victim's

15　Volkswagen with that of Thomas Watkins (aka "City"). He claims that if

16　counsel had done so, he would have found a match with Watkins which

17　would have established that the victim was mistaken and that Petitioner

18　did not actively engage in the kidnaping of the victim or the use of a

19　firearm. Second, Petitioner claims that his trial counsel was

20　ineffective for not calling Ricky Nelson as a witness in Petitioner's

21　defense. To support this, Petitioner provides a trancripted pre-trial

22　interview of Ricky Nelson by an investigator of Petitioner's original

23　trial counsel. In this interview, Nelson corroborates Petitioner's claim

24　that he did not accost the victim with a gun and did not abduct her by

25　driving her Volkswagen.

26　　A defendant has a Sixth Amendment right to effective assistance of

27　counsel in a criminal trial. (People v. Ledesma (1987) 43 Cal.3d 171,

28　215 (under both the United States and California constitutions);

6

Holloway v. Arkansas (1978) 435 U.S. 475, 481 (under the United States Constitution).)

"[T]he burden of proving a claim of inadequate trial assistance' rests upon the habeas corpus applicant." (People v. Madaris (1981) 122 Cal.App.3d 234, 241; emphasis in original.)  A petitioner must make a showing, first, that the errors committed by his attorney "fell below an objective standard of reasonableness . . . under prevailing professional norms." (Strickland v. Washington (1984) 466 U.S. 668, 688.)

Second, a petitioner must show a "reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Id. at 693-94.); see also People v. Ledesma, supra, 43 Cal.3d at 215-218.) If courts can dispose of an ineffective assistance of claim on the basis that the defendant has failed to establish any prejudice, then the performance prong need not be reached. (Strickland v. Washington 466 U.S. at 697.)

Our courts have found valid claims of ineffective assistance of counsel for failing to properly investigate a defendant's case before trial. (People v. Shaw (1984) 35 Cal.3d 535, 542; and People v. Bess (1984) 153 Cal.App.3d 1053.)

Petitioner's claim here directly and only attacks count one of his conviction as a principal to the crime of robbery for kidnaping with an enhancement for personal use of a firearm[2]. Petitioner's claim that the

---

[2] Petitioner further argues that this claim also bolsters his original defense that the victim consented to the sexual acts described in Counts 2 through 5. However, it does not. While Petitioner provides evidence that the victim may have been mistaken about who initially accosted her, Petitioner fails to present any additional evidence that the sexual conduct was consensual. Without any additional evidence on this subject, there is no reason whatsoever to question the jury's decision to find the victim's testimony more credible and to thereby convict him of Counts 2 through 5.

7

1  unidentified fingerprints found in the victim's Volkswagen, if tested,
2  would match those of Watkins is complete speculation. However, clearly
3  it is troublesome that there were more than two dozen latent
4  fingerprints in the victim's vehicle that could not be identified and
5  did not match Petitioner's. Given that the People alleged that
6  Petitioner drove the Volkswagen, a stick shift, and that there was no
7  evidence that the perpetrators wore gloves, it would seem surprising
8  that none of the prints matched Petitioner. Nevertheless, none of this
9  evidence is new. The trial court below was well aware of the fingerprint
10 evidence, and chose to rely on the victim's testimony to convict
11 Petitioner.

12      However, the jury did not have the additional benefit of Ricky
13 Nelson's testimony as described in Petitioner's Exhibit E. Presuming
14 that Exhibit E is an accurate transcript of the investigator's
15 questioning of Nelson, Nelson had exculpatory evidence to offer.

16      In this interview made before Petitioner's trial, Nelson
17 consistently claims that Watkins (aka "City") was the person who both
18 brandished a firearm in order to abduct the victim and the person who
19 drove the victim's Volkswagen. In addition, Nelson claims that
20 Petitioner was the third man waiting in the Dodge Colt and was not
21 involved in the initial abduction. Moreover, Nelson stated that, when
22 he and Watkins returned to meet Petitioner in the Colt and explained to
23 him that they had abducted the victim, Petitioner expressed disdain.
24 Finally, in this same interview, Nelson explained that he thought that
25 "maybe City [Watkins] had an earring in either his nose or ear."
26 (Exhibit E, p. 11.)

27      Taken together, and if true, this would have lent support to
28 Petitioner's defense at trial. It would have corroborated his claim that

8

1 | he did not personally brandish a firearm to abduct the victim and that
2 | he was not a principal in the abduction. It would have also explained
3 | why Petitioner's fingerprints were not found on the Volkswagen and
4 | directly supports his claim that the unidentified prints belonged to
5 | Watkins. Finally, because Nelson states that it was possible that
6 | Watkins wore an earring, it may also support the reason why the victim
7 | believed the driver of her Volkswagen wore an earring. It also, again,
8 | suggests that Petitioner was not the person who abducted the victim at
9 | gunpoint and drove her vehicle.

10 |    As the Court of Appeals stated "this is not a case of pure mistaken
11 | identity, but one of confusion of criminal actors in a criminal drama."
12 | (People v. Motley, H010667, Slip Op. 13.)

13 |    However, in this instance, the evidence presented in Petitioner's
14 | Exhibit E, if true, would be evidence negating part of his guilt as to
15 | Count 1 and thereby would reduce his culpability for the offense. At the
16 | very least, it would mean that there was insufficient evidence for
17 | personal use enhancement. Given that Petitioner's trial counsel was
18 | aware of Nelson's potentially exculpatory evidence, was aware of the
19 | fingerprint evidence, and may have had the opportunity to compare the
20 | fingerprint evidence with Watkin's prints (see Petitioner's Exhibit F),
21 | Petitioner has made a *prima facie* showing that his trial counsel was
22 | ineffective for failing to investigate his case,

23 |

24 |    Accordingly, pursuant to Rule 4.500(a) of the California Rules of
25 | Court, the District Attorney is ordered to show cause why Petitioner is
26 | not entitled to relief based on the claim of ineffective assistance of
27 | trial counsel and sufficiency of the evidence. The District Attorney is
28 | directed to file the responsive pleading within thirty (30) days after

the date of service of this order. If Petitioner so desires, he may request that counsel be appointed, and the court must appoint counsel for Petitioner. (In re Clark (1993) 5 Cal.4th 750, 780.) Petitioner may file a Denial (Traverse) within thirty (30) days after the receipt of the Return.

DATED: _December 16_, 2002

ALONSO FERNANDEZ
JUDGE OF THE SUPERIOR COURT

cc:    Petitioner
       District Attorney
       Research
       File

10

# EXHIBIT .B
## INSUFFICIENCY OF EVID. CLAIM

EXHIBIT B

EXHIBIT B



1 [ PEOPLE V. SHELLS, (1971) 4 CAL. 3d 626, 630 [EMPHASIS ADDED] ]

2

3

4

5

6 GROUND #4 ↓

7 ↓

8

GROUND #4

### ARGUMENT

EVIDENCE WHICH MERELY CREATES A STRONG
SUSPICION OF THE GUILT OF THE ACCUSED,
WHICH DOES NOT SHIFT THE BURDEN OF PR-
OOF IN ANY FORM.

Petitioner contends that evidence which merely creates a st-
rong suspicion of the guilt of the accused does not shift the. bu-
rden of proof and impose upon the accused the duty of overcoming
the suspicion (People -v- Alkow (1930) 97 Cal.App.2d 797, 802).

Mere conjecture, surmise or suspicion is not equivalent of
reasonable inference and does not constitute proof, and proof of
mere opportunity to so act is no proof that the act was in fact
done. (See, People -v- Terry, 57 Cal.2d 538).

More is required to constitute substantial evidence of gu-
ilt than that when all of the evidence against an accused is co-
sidered, it gives rise at most to suspicion than he was connected
with the criminal activity at issue. (People -v- Ortiz (1962) 210
Cal.App.2d 489). The petitioner recognizes that before the judg-
ment of the trial court can be set aside for insufficiency of the
evidence to support the verdict of the jury, it must clearly ap-
pear that upon no hypothesis what-ever is there sufficient subst-
antial evidence to support it. (People -v- Dougherty, 40 Cal.2d
876, 885, 256 p.2d 911)

But it is clearly the law that evidence which merely raises
a strong suspicion of the defendant's guilt is not sufficient to
support a conviction. Suspicion is not evidence; it merely raises
a possibility, and this is not a sufficient basis for an infere-
nce of fact (People -v- Briggs, 255 Cal.App.2d 497, 500-501, 63

C.R. 111; People -v- Tatge, 219 Cal.App.2d 430, 435-436, 33 C.R.
323; People -v- Rascon, 128 Cal.App.2d 118, 122, 274 p.2d 899).

The prosecution's burden is a heavy one: "To justify a crim-
inal conviction, the trier of fact must be reasonably persuaded
to a near certainty (People -v- Bassett, 69 A.C. 121, 70 Cal.
Rptr. 193, 443 p.2d 777) In People -v- Redmond, 71 Cal.2d 745,79
Cal.Rptr. 529 and in People -v- Flores, 58 Cal.App.2d 764, our
courts have reversed convictions where the identifications was
not conclusive. Further in the Flores case, supra, the Court ob-
served: "We are not unmindful of the claimed profligate charac-
ter of the appellant, who admitted a prior conviction of a felo-
ny, but we are not now concerned with the guilt or innocence of
appellant, further than to say that the evidence presented at
his trial was insufficient to make out a case of grand theft as
charged against him. As was said by the court in People -v- Braun
31 Cal.App.2d 593,(88 p.2d 728), at page 603, though unfair means
may happen to result in doing justice to the prisoner in the par-
ticular case, yet justice so attained is unjust and dangerous to
the whole community (Hurd -v- People, 25 Mich. 405...The acquit-
al of a guilty person is truly a miscarriage of justice, but the
conviction of an innocent person through relaxation of those fu-
ndamental legal principles such as the one with which we are
here concerned would be a tragedy.

Here, there was no evidence of petitioner having participa-
ted in the kidnap; no evidence that he agreed with his co-defen-
dants to commit the kidnap; no evidence that his co-defendant's
mentioned that they, the co-defendant's, would be kidnapping Ms.
Guthrie; no evidence that the petitioner threatened the victim
with a gun; no evidence that the petitioner had an ear-ring in
his ear; no evidence that Ms. Guthrie's identification of the
petitioner was not mistaken for that of Ricky Nelson, and that
the petitioner's defense of mistaken identity was supported by
the following evidence: (1) his taped interview statement to
Det. Barker wherein he denied entering Ms. Guthrie's Volkswagen;
(2) the absence of any of his fingerprints on the Volkswagen;

and (3) several key conflicts in Ms. Guthrie's identification testimony (e.g., she informed police that the assailant who threatened her with a gun had an earring, however, petitioner does not have pierced ears while Ricky Nelson did wear an earing; and in court she misidentified a photograph of Ricky Nelson as that of petitioner. The petitioner's defense was based upon both mistaken identity (as to the non-sex offenses and the enhancements) and consent (as to the sex offenses). The defense of mistaken identity went to the heart of the prosecution's allegation that petitioner kidnapped Ms. Guthrie for the purpose of robbery (count 1, Penal Code section 209(b)), and threatened her with a weapon (counts 1 to 5, Penal Code §§12022.5(a), 12022.3(a), and 12022.3(b)). If, as petitioner told Det. Barker, he took no part in the kidnap, and did not threaten Ms. Guthrie with a firearm, the jury could have acquitted him of the kidnap and found the weapon enhancements not true.

The petitioner does not have pierced ears while Ricky Nelson did wear an earring; and in court Ms. Guthrie misidentified a photograph of Ricky Nelson as that of petitioner. Therefore, the evidence in this case only consist of a strong suspicion of the guilt of the petitioner and that is not enough (People -v- Rascon 128 Cal.App.2d 118, 122 (274 p. 2d 899).

In People -v- Draper, 69 Cal.App.2d 781, (160 p.2d 80), it is appropriately said: A defendant, no matter how untrustworthy he may be, is not required to prove his innocence. The people must prove him guilty. With these observations we must proceed to consider the sufficiency of the evidence against Draper, 69 Cal. App.2d 781, (160 p.2d 80). In People -v- Tatge, 219 Cal.App.2d 430, 435 (33 Cal.Rptr. 323), it is stated: Moreover, suspicion is not evidence; it merely raises a possibility and that is not sufficient basis for an inference of fact. (Citations). Further, if the circumstantial evidence is susceptible of two reasonable interpretations, one of which points to the innocence, the guilty interpretation must be rejected.

It is now firmly, and universally held that: "The due process clause of the Fourteenth Amendment to the Federal Constituti-

on protects the accused against conviction except upon proof be-
yond a reasonable doubt (People -v- Serrato, 9 Cal.3d 753, 766,
767, 109 Cal.Rptr. 65, 75, 512 p.2d 280, 209; People -v- Coleman,
13 Cal.3d 867, 875, 120 Cal.Rptr. 384, 533 p.2d 1024; People -v-
Vann, 12 Cal.3d 220, 227, 115 Cal.Rptr. 352, 524 p.2d 824.

The United States Supreme Court in In re Winship, 397 U.S.
385, 364, 80 S.Ct. 1068, 1072, 25 L.Ed.2d 368, has stated: Use of
the reasonable doubt standard is indispensable to command the re-
spect and confidence of the community in application of the crim-
inal law. It is critical that the moral force of the criminal law
not be diluted by a standard of proof that leaves people in doubt
whether innocent men are being condemned. It is also important in
our free society that every individual going about his ordinary
affairs have confidence that his government cannot adjudge him
guilty of a criminal offense without convincing a proper factfin-
der of his guilt with utmost certainty (People -v- Garcia, 54
Cal.App.3d 66.

The standard of appellate review was set forth in People -v-
Towler (1982) 31 Cal.3d 105, 117-119: The cases of Jackson -v-
Virginia (1979) 443 U.S. 307 (61 L.Ed.2d 560, 99 S.Ct. 2781) and
People -v- Johnson (1980) 26 Cal.3d 557 (162 Cal.Rptr. 431, 606
P.2d 738), refine the standard of review which governs our consi-
deration of the sufficiency of the evidence contention on this
appeal. (In Jackson, the United States Supreme Court held that
the critical inquiry on review of the sufficiency of the evidence
to support a criminal conviction...is the determine whether the
record evidence could reasonably support a finding of guilty be-
yond a reasonable doubt (443 U.S. at p. 318 (61 L.Ed.2d at p.
573.) The Jackson Court went on to explain that this inquiry does
not require a court to ask whether it believes that the evidence
at trial established guilt beyond a reasonable doubt. (Citation)
Instead the relevant question is whether, after reviewing the
evidence in the light most favorable to the prosecution, any ra-
tional trier of fact could have found the essential elements of
the crime beyond a reasonable doubt (Id. at pp. 318-319 (61 L.Ed.

2d at p. 573).

In Jackson, our court found California's traditional sufficiency of the evidence standard of review consistent with Jackson, emphasizing that in passing upon such a claim "a court must review the whole record in the light most favorable to the judgment below to determine whether is discloses substantial evidence-- that is, evidence which is reasonable, credible and of solid value --such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (26 Cal.3d at p. 578.)

The court later noted: Whether the evidence presented at trial is direct or circumstantial, under Jackson and Johnson the relevant inquiry on appeal remains whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt (See, e.g., People -v- Cordova (1979) 97 Cal.App.3d 665, 669-670; People -v- Young (1981) 120 Cal.App.3d 683, 693-694.(Id.)

On review the appellate court must view the record in a light most favorable to the people, as the party which prevailed below and draw reasonable inferences from the evidence presented and/or prescribed to the trial court in support of its judgment. (See, People -v- Vann (1974) 12 Cal.3d 220, 225.) However, in People -v- Johnson, supra, 26 Cal.3d 557, it was noted that while an appellate court must view the evidence in a light most favorable to the respondent and presume in support of the judgment the existence of every fact a trier could reasonably deduce from the evidence, this review is not limited only to evidence favorable to the respondent. (Id. at pp. 576-577.)

The question as to the sufficiency of the evidence must be judged in light of the entire record and whether the evidence on each essential element is substantial. It is not enough for respondent to simply point to some evidence supporting the finding. Petitioner's alleged involvement in the alleged crime is completely false concerning the prosecution's claim that he committed kidnap, robbery; plus, the identification of Ricky Nelson as that of petitioner is outrageous; plus the petitioner does not have

pierced ears while Ricky Nelson did wear an earring; plus in co-
urt she misidentified a photograph of Ricky Nelson as that of pe-
titioner, and that such identification constitutes "no-identifi-
cation" of petitioner, therefore, the identification of the peti-
tioner was not conclusive and that the evidence presented at his
trial was insufficient to make out a case of kidnap as charged
against him. People -v- Braun, 31 Cal.App.2d 593 (88 p.2d 728).

It is critical that the moral force of the criminal law not
be diluted by a standard of proof that leaves people in doubt wh-
ether innocent men are being condemned. That is exactly what ha-
ppens here. The prosecution fabricated its claim that petitioner
was involved in the alleged kidnap; it fabricated its identifica-
tion of the petitioner; and fabricated all evidence it presented
against the petitioner, and that such evidence consisted of no
evidence. Here, the prosecution completely avoided the fact that
its important in our free society that every individual going
about his ordinary affairs have confidence that his government
cannot adjudge him guilty of a criminal offense without convin-
cing a proper factfinder of his guilt with utmost certainty (See
People -v- Gracia, 54 Cal.App.3d 66.) In the instant case, it is
clear that the jury was blind in returning its guilty verdict
and that it was obviously not a proper factfinder, because its
verdict was based upon lies and/or fabricated evidence. (People
-v- Terry, 57 Cal.2d 538).

For the reasons stated, petitioner urges this court to re-
verse the judgment of conviction.

---

10/ Notably, after the jury returned its findings that each of
the firearm use enhancements alleged in counts 2 through 5 were
true, the trial court struck the enhancements as to count 5 purs-
uant to Penal Code section 1385. (C.T. 338.) The trial court did
so because the firearm was "hidden and out of the way on the se-
cond series of offenses." (Proceedings on Motion for New Trial
and sentencing, November 4, 1992, p. 20:16-24.) It is unclear why
the trial court did not also strike the gun use enhancement as to
count 4, which was committed contemporaneously with act alleged
in count 5. Nevertheless, it is readily apparent that the trial
court recognized the inherent injustice of punishing petitioner
for "use" of a firearm which was in fact hidden and out of the
way.

_EXHIBIT .C_
MOTION TO SUPERIOR CT.



1.
2.
3.
4.
5.
6.
7.
8.

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SANTA CLARA

9.   in re the matter of :                    ] No. 155474
10.                                           ]
11.     Edward E. Motley,                     ] MOTION FOR LEAVE TO
12.                                           ] AMEND TRAVERSE
13.   on Habeas Corpus                        ]
14.  _____      ]
15.
16.  To: THE HONORABLE JUDGE ALFONSO FERNANDEZ
17.
18.      Petitioner moves for leave to amend the Traverse
19.  filed in this matter on May 21, 2003. Good cause for this
20.  motion is set forth in the attached memorandum.
21.
22.  Dated: _____
23.                                    Respectfully Submitted,
24.
25.                                    Edward E. Motley
                                      PETITIONER
26.                                   Edward E. Motley
27.
28.

(1)

# MEMORANDUM IN SUPPORT OF MOTION FOR
# LEAVE TO AMEND PREVIOUSLY FILED TRAVERSE

On or around March 19, 2003 petitioner recieved a letter from a Steven D. Woodson. Informing petitioner that he had been asked by the court to represent petitioner in the coming stages of the habeas proceedings. Counsel aided petitioner in his filing of the Traverse by constructing petitioner's notes and suggested case law. Thus far counsel has filed only the arguments and case law researched by petitioner, not one case relied upon in the trauerse is owed to counsel's own research. But petitioner is not complaining of counsel's previous lack of performance.

After the Trauerse was filed (May 21, 2003) petitioner noticed that respondent failed to controvert crucial material allegations set forth in petitioner's petition, see _in re Lewallen (1979) 23 C. 3d 274_, see also _Cal. Rules of Ct. 4.551(d)_. On page 9 of this court's issuance of Order to Show Cause (December 16, 2002) the Honorable Judge A. Fernandez specifically ordered the District Attorney to show cause why petitioner isn't entitled to relief regarding the claims of ineffective assistance of counsel and sufficiency of the evidence. In the District Attorney's Return to Order to Show Cause (dated: January 30, 2003) he made no mention of the sufficiency of the evidence claims. With this fact in mind, petitioner notified counsel of his findings and asked counsel if the trauerse could be amended in the name of bringing my findings to the attention of the Court and if so, would it be fruitful or not. Petitioner's counselor never replied.

(2)

1.     Furthermore petitioner requests the court to inform
2.  petitioner of why <u>Cal. Rules of Ct. 4.551 (f) and (h)</u> are not
3.  being applied in the case herein? There was an order extend-
4.  ing time (see Attach #1) issued and sent to petitioner within the
5.  initial 30 day period dated from June 17,- July 21, 2003. Since
6.  that order petitioner hasn't recieved any other order or
7.  explanation after requesting info from the clerk. Petitioner
8.  has also looked to counsel for explanation (see att. #2) to no
9.  avail. Counsel claimed that he requested an extension of
10.  time from July 21, 2003 til Aug. 11, 2003 to do some investig-
11.  ation that may lead to a supplemental of the proceedings.
12.  Petitioner assumes that counsel never recieved a reply,
13.  (see again att. #2) because petitioner never recieved any court
14.  documents issueing an extension.

## Conclusion

17.     Petitioner's counsel has no intentions of addressing the
18.  court with the above matters so petitioner moves <u>on his own</u>
19.  for leave to amend the previously filed traverse being re-
20.  viewed. Petitioner also requests the court to notify peti-
21.  tioner of the "current standings" of the entire habeas in
22.  review.

23.     Dated:_____

Respectfully Submitted,

Edward E. Motley

Petitioner in pro per

ATT. # 1

ATTACHMENT # 1



FILED

JUN 19 2003

KIRI TORRE
Officer
of Santa Clara
DEPUTY

1
2
3
4
5
6
7

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SANTA CLARA**

8
9
10
11
12
13
14

| | |
|---|---|
| In re | ) |
| **EDWARD E. MOTLEY,** | ) |
| On Habeas Corpus | ) |

No.: 155474
**ORDER EXTENDING TIME**

15    EDWARD E. MOTLEY presented this Court with a petition for a writ of

16  habeas corpus in which he claims that trial and appellate counsels were

17  ineffective and there was insufficient evidence for his conviction. The

18  People have filed their Return, and Petitioner has filed his Traverse.

19    The large amount of extraordinary writs and other matters pending

20  before this Court has precluded adequate consideration of the instant

21  petition within the requisite thirty-day period. Good cause appearing,

22  the Court on its own motion extends its time to resolve the petition

23  until July 21, 2003. (Cal. Rules of Court 4.551(h).)

24  DATED: _June 17_, 2003

25

ALFONSO FERNANDEZ
JUDGE OF THE SUPERIOR COURT

26  cc:  Petitioner
27       District Attorney
         Research
28       File



ATT. # 2

ATTACHMENT # 2

STEVEN D. WOODSON
Attorney at Law
1590 Berryessa Road
San Jose, CA 95133
Phone : 408 453 1121
Fax: 408 437 9011

August 26,2003

Mr. Edward Motley
H56441/C8-117
P.O. Box 3030
Susanville, CA 96127
High Desert State Prison

Dear Edward,

        I have not heard from the Court yet, ruling on your Writ.
The investigator spoke with Watkins on two occasions. He will be no help to
us.

        I can only guess that the Court is backed up with a lot of work. You
will probably hear at the same time I do about the ruling, but I will notify
you the instant that I get the decision.

                           Sincerely

                           Steven D. Woodson

# PROOF OF SERVICE BY PERSON IN STATE CUSTODY

I, the undersigned, do certify, and verify that I am over the age of (18) eighteen years old, that I am incarcerated at H.D.S.P, in Susanville California, that I am a party to the above-entitled cause, and that on _____ I served a true:

## MOTION FOR LEAVE TO AMEND TRAVERSE

the above mention was to be deposited in the United States Mail pursuant to California Code of Regulations Sections &3142 and &3165 to:

Honorable Alfonso Fernandez
SANTA CLARA COUNTY SUPERIOR COURT
Department #41. Hall of Justice
190 West Hedding Street
San Jose, California 95110

(D.D.A.) Ronald R. Rico
OFFICE OF THE DISTRICT ATTORNEY
County Government Center, West Wing
70 West Hedding Street, Sixth Floor
San Jose, California 95110

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on _____ .

_Edward E.A. Jolley_
EDWARD E. MOTLEY

(4)

EXHIBIT D

MAILROOM LEGAL LOG

EXHIBIT D

EXHIBIT D

EXHIBIT D

# CDC-119

## SPECIAL PURPOSE LETTERS

| MOTLEY | H56441 | ADDRESS | TYPE OF LETTER REC'D/SENT | SENT | REC'D |
|---|---|---|---|---|---|
| | | SANTA CLARA CO SUPERIOR CRT-190 WEST HEDDING ST SAN JOSE CA 95110 | STMP LETT | 1/13/2003 | |
| | | STEVEN D. WOODSON,ATTY-1590 BERRYESSA RD SAN JOSE CA 95133 | STMP LETT | 3/20/2003 | |
| | | STEVEN D. WOODSON,ATTY-1590 BERRYESSA RD SAN JOSE CA 95133 | STMP LETT | 4/4/2003 | |
| | | STEVEN D. WOODSON,ATTY-1590 BERRYESSA RD SAN JOSE CA 95133 | STMP LETT | 5/2/2003 | |
| | | STEVEN D. WOODSON,ATTY-1590 BERRYESSA RD SAN JOSE CA 95133 | STMP LETT | 5/20/2003 | |
| | | STEVEN WOODSON 1590 BERRYESSA RD. SAN JOSE, CA.95133 | IND | 6/24/2003 | |
| | | STEVEN D WOODSON 1590 BERRYESSA RD. SAN JOSE, CA. 95133 | STAMPED LETTER | 6/30/2003 | |
| | | STEVEN D WOODSON 1590 BERRYESSA RD. SAN JOSE, CA. 95133 | STAMPED | 7/23/2003 | |
| | | STEVEN D WOODSON 1590 BERRYESSA RD. SAN JOSE, CA. 95133 | STAMPED | 8/6/2003 | |
| | | STEVEN D. WOODSON,ATTY-1590 BERRYESSA RD SAN JOSE CA 95133 | STAMPED | 8/27/2003 | |
| | | SANTA CLARA CO SUPERIOR CRT-190 WEST HEDDING ST SAN JOSE CA 95110 | STAMPED | 8/28/2003 | |
| * ALERTED COUNSEL OF THE RESPONDENT'S FAILURE | | STEVEN D. WOODSON,ATTY-1590 BERRYESSA RD SAN JOSE CA 95133 | STAMPED | 9/3/2003 | |
| * MOTION TO AMEND * | | SANTA CLARA CO SUPERIOR CRT-190 WEST HEDDING ST SAN JOSE CA 95110 | STAMPED | 9/19/2003 | |

EXHIBIT .E

ORDER FOR EVID. HEARING



(ENDORSED)
F I L E D

SEP 2 4 2003

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ P COOPER _____ DEPUTY

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

In re                                    )
                                         )  No.: 155474
    EDWARD E. MOTLEY,                    )  ORDER FOR EVIDENTIARY HEARING
                                         )
On Habeas Corpus                         )
                                         )

EDWARD E. MOTLEY presented this Court with a petition for a writ of habeas corpus in which he claims that trial and appellate counsels were ineffective and there was insufficient evidence for his conviction. The People have filed their Return, and Petitioner has filed his Traverse.

Petitioner recently requested an extension of time for this Court to determine the merits of the petition so that he may locate and contact a potentially exculpatory witness. This Court extended time to resolve the petition to August 21, 2003. (Cal. Rules of Court 4.551(h).)

To date, this Court has received no supplemental filing from Petitioner regarding a potentially exculpatory witness.

Nonetheless, this Court determines that Petitioner has shown "there is a reasonable likelihood that petitioner may be entitled to relief" dependant on the resolution of issues of fact, thereby

1   meriting an evidentiary hearing. (Cal. Rules of Court, Rule 4.551(f).)

2   Accordingly, there will be a hearing at which Petitioner has the

3   burden of proving his claims. Counsels for Petitioner and the People

4   are directed to contact the clerk of this Court and set a date for the

5   hearing within 60 days of the date of this order.

6

7

8   DATED: September 22, 2003

    ALFONSO FERNANDEZ
    JUDGE OF THE SUPERIOR

9   cc:  Petitioner
10       District Attorney (Ron Rico)
         Research
11       File

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA

Plaintiff:
PEOPLE OF THE STATE OF CALIFORNIA

Defendant
EDWARD E. MOTLEY,

PROOF OF SERVICE BY MAIL OF:
ORDER FOR EVIDENTIARY HEARING

**(ENDORSED)**

**F I L E D**

SEP 2 4 2003

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of P.COOPER Santa Clara
BY ————————————
DEPUT

CASE NUMBER:
155474

CLERK'S CERTIFICATE OF MAILING: I certify that I am not a party to this case and that a true copy of this document was mailed first class postage fully prepaid in a sealed envelope addressed as shown below and the document was mailed at 190 W. Hedding St. SAN JOSE, CALIFORNIA on ___09-24-03__. I declare under penalty of perjury that the foregoing is true and correct.

KIRI TORRE, Chief Executive Officer

**P. COOPER**
By_____ Clerk
      Priscilla Cooper

Steven D. Woodhson
Attorney at Law
1590 Berryessa Road
San Jose, CA., 95133

Office of the District Attorney
Attn: Ron Rico, Deputy District Attorney
70 W. Hedding St.
San Jose, CA 95110
* Placed in Pony Pick-up box

Research Attorney/Criminal Division
190 W. Hedding Street
San Jose, CA 95110
* Placed in Research Attorney's Box at
  Hall of Justice

CJIC

EXHIBIT F

EXHIBIT F
COUNSEL ADDRESSING COURT

EXHIBIT F

EXHIBIT F

71

1          THE COURT:  Both sides rest with regard to evidence

2   that is presented to the Court, and this is the time for

3   argument.  Mr. Woodson.

4          MR. WOODSON:  Yes, Your Honor.  Thank you.

5          THE COURT:  Can I see you both at the bench,

6   please?

7          MR. WOODSON:  Yes.

8          (A discussion was had at the bench.)

9          MR. WOODSON:  I have enough with the spoken word.

10  The hearing was granted on the legal basis, two bases really,

11  the first being insufficiency of the evidence, and that

12  basically being because of alleged ineffective assistance of

13  counsel.  The courts had cited the trial counsel's failure to

14  call Rickie Nelson as a possible exculpatory witness and

15  there was failure, alleged failure of trial counsel to

16  adequately investigate the fingerprint evidence in this case

17  by taking steps to require Thomas Watkins' from other law

18  enforcement agencies.

19      Now, I would also point out initially, Your Honor, in

20  the fact that the return did not actually deny all of the

21  allegations set forth in the order -- in the writ, I believe

22  those matters are not affirmatively denied or deemed

23  admitted.  And there was several points that Mr. Motley

24  referenced in his writ that were not affirmatively denied by

25  the District Attorney, by Mr. Rico in his return.  My

26  understanding of the law in that area is that all of those

27  matters are deemed admitted by the People for purposes of

28  this hearing.



EXHIBIT .G
PEOPLE ADDRESSING COURT

EXHIBIT G

EXHIBIT G

79

1   different time, if application were made, he would have the

2   eyewitness expert, you might have a different result because

3   that would have been conceivable that a jury could have

4   grabbed on to that contradicted the testimony of the victim,

5   this compelling, strong witness who testified without any

6   challenge at all except for Mr. Kroeber's cross-examination.

7           MR. WOODSON:  If I could have one moment.

8           THE COURT:  Certainly.

9           (Off the record.)

10          MR. WOODSON:  Your Honor, the testimony at the

11  trial was that the, in regards to the guns and weapon, it was

12  a little unclear from Mr. Kroeber's testimony, but the black

13  gun testified to, the black firearm I'll call it that was

14  testified to by the victim at the trial was never

15  circumstantially or in any other way linked with Mr. Motley.

16  What happened was the one firearm that was seized from the

17  hatchback was in the back of where the testimony was that

18  Mr. Watkins was sitting.  It was the .22 I believe -- 32.

19  But it was not this black weapon.  There was no link

20  whatsoever from Nelson, from Motley, from the search and

21  seizure of the black firearm to Mr. Motley.

22      Your Honor, with those comments, I would submit it.

23          THE COURT:  Mr. Fletcher.

24          MR. FLETCHER:  Your Honor, I am going to take this

25  first on as I understand the Court's order, although your

26  order or issuing an ordering for an evidentiary hearing did

27  not state what issues you wanted to hear addressed.  From the

28  context of what is taking place, I am assuming that, I would

80

1  ask if I am not going in the right place, I don't want to

2  waste your time.  The real issue is adequacy of counsel

3  relative to the fingerprint evidence and the adequacy of

4  counsel to perform relative to calling or not calling Rickie

5  Nelson, and those are really the only two issues that you

6  were interested in.

7         THE COURT:  That is correct.

8         MR. FLETCHER:  First, Your Honor, the fingerprint

9  evidence, and I recognize that Mr. Hirsch's testimony is a

10  little bit, can be a little bit confusing, particularly if

11  you were not there, but the allegation that Mr. Watkins'

12  prints were never compared to the lifts off of the victim's

13  car is just wrong.  And you need only look at Exhibit B to

14  reach that conclusion.

15         His testimony in court, I believe, is a reference to not

16  having the original ten print card.  The a ten print card, as

17  you know, is a particular -- it is a term of art.  And he did

18  not have those to compare.  But as you can see from Exhibit

19  B, he had a, he being Mr. Hirsch, the latent print examiner,

20  obtained a copy from the Federal Bureau of Investigation of

21  Thomas Watkins which were compared.  And as he concludes here

22  that the only matches that he could make, I believe, to thumb

23  prints of Mr. Nelson off of the passenger side door, as I

24  recall, of the victim's Volkswagen.

25         So to suggest that Mr. Kroeber should have had these

26  fingerprints compared to Mr. Watkins' and therefore failing

27  to do that somehow results in ineffective assistance of

28  counsel is based on an incorrect fact, and that is just not

EXHIBIT H

EXHIBIT H
COURT'S FINAL ORDER



EXHIBIT H

ATTACHMENT

FILED

FEB 1 7 2004

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
By_____
DEPUTY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

In re

     **EDWARD E. MOTLEY,**

On Habeas Corpus

No.: 155474
**FINAL ORDER**

    EDWARD E. MOTLEY presented this Court with a petition for a writ of habeas corpus in which he claims that trial and appellate counsels were ineffective, and there was insufficient evidence for his conviction. The People have filed their Return, and Petitioner has filed his Traverse. An evidentiary hearing was held on January 8, 2004.

    This Court's order to show cause revolved around his counsel's alleged failure to call Ricky Nelson as a witness and the alleged failure to compare the fingerprints of Thomas Watkins with the fingerprints lifted from the victim's vehicle. Petitioner asserted that Ricky Nelson's testimony and the fingerprint matching would show that Watkins was the person who initially abducted the victim at gunpoint. Petitioner alleged that this evidence would have indicated that there was insufficient evidence to convict him on count one of his conviction

1

1  as a principal to the crime of robbery for kidnaping with an enhancement

2  for personal use of a firearm.

3      However, based upon the testimony given at the evidentiary hearing,

4  it is apparent that Thomas Watkin's fingerprints were, contrary to

5  Petitioner original claim, actually compared with the latent prints

6  taken from the victim's vehicle. However, none of the prints matched

7  either Petitioner or Watkins. As a result, Petitioner has failed to

8  prove that Watkins was the person who abducted the victim at gunpoint.

9      In addition, no error can be assigned to trial counsel's alleged

10 failure to call Ricky Nelson as a witness at trial. As trial counsel and

11 his investigator made clear, Nelson's statements in his interviews

12 conflicted and changed on several key issues, including who was

13 initially present when the victim was abducted. As a result,

14 Petitioner's defense counsel made a proper tactical decision to not call

15 Nelson as a witness due to his inconsistent statements. (People v. Bolin

16 (1998) 18 Cal.4th 297, 334.)

17     Accordingly, Petitioner has failed to meet his burden to show that

18 he had ineffective assistance of counsel at his trial or on appeal.

19

20     The petition is DENIED.

21

22 DATED: February 10, 2004

    ALFONSO FERNANDEZ
    JUDGE OF THE SUPERIOR COURT

23 cc:  Petitioner
24      District Attorney (Ron Rico)
        Research
25      File

26

27

28



2

EXHIBIT I

EXHIBIT . I

DISTRICT COURT'S "OTSC"

EXHIBIT I

EXHIBIT I

FILED

IN THE UNITED STATES DISTRICT COURT OCT 1 9 2005

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD W. WIEKING
NORTHERN DISTRICT OF CALIFORNIA

EDWARD EUGENE MOTLEY,                    )    No. C 05-3254 MJJ (PR)
                                         )
                    Petitioner,          )    **ORDER TO SHOW CAUSE**
                                         )
        vs.                              )
                                         )    (Docket Nos. 3, 5, 6)
D.L. RUNNELS,                            )
                                         )
                    Respondent.          )
_____ )

Petitioner, a California prisoner, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254. He has applied for leave to proceed in forma pauperis.

## BACKGROUND

In 1992, petitioner was sentenced to life plus 36 years in state prison based on his conviction for kidnap robbery and various related charges and sentence enhancements. The California Court of Appeal reversed the conviction on several counts, but otherwise affirmed. The Supreme Court of California denied review. Petitioner subsequently brought unsuccessful habeas petitions in all three levels of the California courts.

## DISCUSSION

A.     Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975). A district court shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

United States District Court
For the Northern District of California

B.    Legal Claims

Petitioner claims that: (1) he received ineffective assistance of counsel at trial, in violation of his Sixth Amendment rights; (2) he received ineffective assistance of appellate counsel, in violation of his right to due process; (3) his conviction was based on insufficient evidence, in violation of his right to due process; and (4) the deferential standard of 28 U.S.C. § 2254(d)(1)(A) does not apply to his case.

Liberally construed, the first three claims set forth above state a cognizable basis for federal habeas relief. The fourth claim does not state an independent basis for federal habeas relief, but rather simply argues which standard should be applied in reviewing this petition. The Court will thus address the arguments raised in this claim, as should respondent, in connection with the other three substantive claims, and not as its own independent claim.

## CONCLUSION

For the foregoing reasons,

1.    The Clerk of the Court shall serve by certified mail a copy of this order, petition, and all attachments thereto, upon respondent and respondent's attorney, the Attorney General for the State of California. The Clerk shall also serve a copy of this order on petitioner.

2.    Respondent shall file with the Court and serve on petitioner, within 60 days of the date this order is filed, an answer conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, showing cause why a writ of habeas corpus should not be granted on petitioner's cognizable claims described above. Respondent shall file with the answer and serve on petitioner a copy of all portions of the state trial record that have been transcribed previously and that are relevant to a determination of the issues presented by the petition.

If petitioner wishes to respond to the answer, he shall do so by filing a traverse with the Court and serving it on respondent within 30 days of his receipt of the answer.

3.    Respondent may file a motion to dismiss on procedural grounds in lieu of an

2

answer, as set forth in the Advisory Committee Notes to Rule 4 of the Rules Governing Section 2254 Cases. If respondent files such a motion, petitioner shall file with the Court and serve on respondent an opposition or statement of non-opposition within 30 days of receipt of the motion, and respondent shall file with the Court and serve on petitioner a reply within 15 days of receipt of any opposition.

4.    Petitioner is reminded that all communications with the Court must be served on respondent by mailing a true copy of the document to respondent's counsel.

5.    It is petitioner's responsibility to prosecute this case. Petitioner must keep the Court and respondent informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

6.    Upon a showing of good cause, requests for a reasonable extension of time will be granted as long as they are filed on or before the deadline which they seek to extend.

7.    The application for leave to proceed in forma pauperis is GRANTED. This order terminates docket numbers 3, 5, 6.

IT IS SO ORDERED.

DATED:  10/18/2005

MARTIN J. JENKINS
United States District Judge

3

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

Motley,

               Plaintiff,

    v.

Runnels et al,

               Defendant.

                                /

Case Number: CV05-03254 MJJ

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 20, 2005, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Edward E. Motley
High Desert State Prison
Prisoner H56441
P.O. Box 3030
Susanville, CA 96127

Dated: October 20, 2005

Richard W. Wieking, Clerk
By: Monica Tutson, Deputy Clerk

EXHIBIT.J'
DIST. COURT'S DISMISSAL

EXHIBIT J

FILED

JUL 26 2006

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EDWARD EUGENE MOTLEY,

        Plaintiff,

  v.

D.L. RUNNELS,

        Defendant.
_____/

No. C05-03254 MJJ

**ORDER GRANTING MOTION TO DISMISS HABEAS PETITION AS UNTIMELY**

**(Docket No. 8)**

**INTRODUCTION**

    Petitioner is a California prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a motion to dismiss the petition as untimely. Petitioner filed an opposition, to which respondent has filed a reply.

**FACTUAL BACKGROUND**

    Petitioner was convicted in 1992 of kidnaping for robbery (Cal. Penal Code, § 209), forcible oral copulation (Cal. Penal Code, § 288), and penetration by a foreign object (Cal. Penal Code, § 289). Following his direct appeal to the California Court of Appeal, petitioner was sentenced in 1994 to 30 years to life in state prison. Petitioner did not seek further direct review.

    On June 22, 2002, Petitioner filed a petition for habeas corpus in the Santa Clara Superior Court. On January 8, 2004, the superior court held an evidentiary hearing, and then denied the habeas petition on February 17, 2004. Petitioner then filed three petitions for

United States District Court
For the Northern District of California

1  habeas corpus and one petition for writ of mandamus in the California Court of Appeal. The
2  habeas petitions were denied, the last on March 9, 2005, and the petition for writ of
3  mandamus was also denied. The Supreme Court of California denied review on June 8,
4  2005. The instant petition for a writ of habeas corpus was filed on August 5, 2005.

5                                  **DISCUSSION**

6         The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became law
7  on April 24, 1996, and imposed for the first time a statute of limitations on petitions for a
8  writ of habeas corpus filed by state prisoners. Petitions filed by prisoners challenging non-
9  capital state convictions or sentences must be filed within one year of the latest of the date on
10  which: (1) the judgment became final by the conclusion of direct review or the expiration of
11  the time for seeking direct review; (2) an impediment to filing an application created by
12  unconstitutional state action was removed, if such action prevented petitioner from filing;
13  (3) the constitutional right asserted was recognized by the Supreme Court, if the right was
14  newly recognized by the Supreme Court and made retroactive to cases on collateral review;
15  or (4) the factual predicate of the claim could have been discovered through the exercise of
16  due diligence. See 28 U.S.C. § 2244(d)(1).

17         The one-year period generally will run from "the date on which the judgment became
18  final by conclusion of direct review or the expiration of the time for seeking such review."
19  28 U.S.C. § 2244(d)(1)(A). In this case, direct review concluded in 1994. For cases, such as
20  this one, where the conclusion of direct review preceded the 1996 passage of AEDPA, the
21  statute of limitations began running on the date of AEDPA's enactment, April 24, 1996, and
22  expired one year later, on April 24, 1997. Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir.
23  2001). The instant petition was filed in this court on August 5, 2005, more than eight years
24  after the date on which the limitations period expired. Although the running of the one-year
25  limitations period is tolled during the time in which a properly filed application for post-
26  conviction or other collateral review is pending in the state courts, see 28 U.S.C. §
27  2244(d)(2), a state habeas petition filed after the expiration of AEDPA's limitations period
28  cannot serve to toll the limitations period. See Ferguson v. Palmateer, 321 F.3d 820, 823

United States District Court
For the Northern District of California

2

United States District Court
For the Northern District of California

(9th Cir. 2003) (holding, even where state petition timely filed, "section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"). As Petitioner's first application for post-conviction or other collateral review was not filed in the state courts until June 22, 2002, more than five years after the limitations period already had expired, Petitioner is not entitled to tolling under § 2244(d)(2). Although equitable tolling may be available in some instances, Petitioner here asserts no basis for equitable tolling.

Petitioner argues that he should be excused from failing to timely file, on grounds of "actual innocence." In Schlup v. Delo, 513 U.S. 298, 316 & n.16 (1995), the United States Supreme Court held that petitioners may avoid procedural bars to consideration of the merits of their petitions if they can establish "actual innocence." This "actual innocence gateway" has been applied after the enactment of AEDPA, see Griffin v. Johnson, 350 F.3d 956, 960, 963 (9th Cir. 2003), and although the issue has not been resolved definitively by the Ninth Circuit, the gateway may be available to avoid dismissal of a petition that otherwise would be time-barred by AEDPA, see Majoy v. Roe, 296 F.3d 770, 776-77 (9th Cir. 2002) (suggesting unavailability of actual innocence gateway would raise serious constitutional concerns; remanding to district court for determination of whether actual innocence established before deciding whether gateway available under AEDPA).

To pass through the Schlup gateway, a petitioner must demonstrate a colorable claim of actual innocence, i.e., that the petitioner is, "innocent of the charge for which he is incarcerated." See Schlup, 513 U.S. at 321. "Actual innocence" means factual innocence, not merely legal insufficiency. See Bousley v. United States, 523 U.S. 614, 623-24 (1998). It is not enough that the evidence shows the existence of reasonable doubt, petitioner must show "it is more likely than not that no 'reasonable juror' would have convicted him." See Schlup, 518 U.S. at 329. As the Ninth Circuit has explained, "the test is whether, with the new evidence, it is more likely than not that no reasonable juror would have found Petitioner guilty." Van Buskirk v. Baldwin, 265 F.3d 1080, 1084 (9th Cir. 2001). "To support a claim of actual innocence, a petitioner must support his allegations of constitutional error with new

reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup, 513 U.S. at 324. This does not mean a petitioner need present physical evidence that he did not commit the crime with which he is charged. See Gandarela v. Johnson, 286 F.3d 1080, 1086 (9th Cir. 2002). A petitioner may pass through the Schlup gateway by producing evidence "that significantly undermines or impeaches the credibility of witnesses presented at trial, if all the evidence, including the new evidence, makes it 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" See id. (quoting Schlup, 513 U.S. at 327). The "new" evidence need not be newly available, just newly presented, in other words, evidence that was not presented at trial. See Griffin, 350 F.3d at 961.

Here, Petitioner was charged with kidnaping, robbing and sexually assaulting a woman along with two other men, Thomas Watkins and Ricky Nelson. The victim was originally accosted in her Volkswagen two men. The two men then moved to a parked Dodge Colt containing a third man. The sexual assaults and robbery occurred thereafter. At trial, Petitioner did not dispute that he was present at this attack, but claimed that he had consensual sex with the victim. Although the victim identified him as the driver of her Volkswagen, he claims he was the third man in the Dodge Colt.

The "new" evidence to which Petitioner points are: a comparison of Watkins's fingerprints with other fingerprints lifted from the Volkswagen, and statements by Nelson that petitioner was not in the Volkswagen with him. (See Pet's Attachment 1.) Petitioner complains that counsel failed to present this evidence at trial. With respect to the fingerprint comparison, petitioner asserts that the prosecution's fingerprint expert had requested, but was not given, additional prints from Watkins for use in a comparison with the Volkswagen prints. After holding an evidentiary hearing, however, the Santa Clara Superior Court found that Watkins' prints were compared to those found on the Volkswagen, without a match; at most, the fingerprint results were inconclusive. As such, the fingerprint comparison does not constitute new exculpatory evidence, much less evidence that establishes petitioner's "actual innocence" of the charges.

4

Regarding counsel's alleged failure to call Nelson as a witness, the superior court found that Nelson's statements were actually inconsistent regarding Petitioner's role in the incident. As a result, the superior court found that "Petitioner's defense counsel made a proper tactical decision to not call Nelson as a witness due to his inconsistent statements." Id. Moreover, even if Nelson's testimony were admitted, it would still need to be weighed against the victim's identification of Petitioner, and petitioner's own admission to being present at the incident. Given that Petitioner was clearly a participant, and that Nelson's statements were both inconsistent and were coming from a person who had been convicted of kidnaping and assaulting the victim, Nelson's testimony was far from being so exculpatory as to overcome the evidence against him and meet the high standard of establishing actual innocence. Accordingly, the Court cannot reach the merits of this untimely habeas petition by way of Schlup's "actual innocence" gateway, and the untimeliness of the instant petition under AEDPA is not excused.

### CONCLUSION

For the foregoing reasons, Respondent's motion to dismiss the petition is GRANTED, and the instant petition for a writ of habeas corpus is hereby DISMISSED as untimely.

This order terminates Docket No. 8.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 26, 2006

MARTIN J. JENKINS
UNITED STATES DISTRICT
JUDGE

United States District Court
For the Northern District of California

5

**FILED**

**JUL 2 7 2006**

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Motley,

        Plaintiff,

  v.

Runnels,

        Defendant.

_____/

No. CV 05-v-03254 MJJ

**JUDGMENT IN A CIVIL CASE**

    **( ) Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

    **(X) Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

    **IT IS SO ORDERED AND ADJUDGED**

        Respondent's Motion to Dismiss **granted.**

Dated:     7/27/2006

Richard W. Wieking, Clerk

By:
Monica Tutson, Deputy Clerk

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

MOTLEY,

        Plaintiff,

  v.

RUNNELS et al,

        Defendant.

_____/

Case Number: CV05-03254 MJJ

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 27, 2006, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Edward E. Motley
High Desert State Prison
Prisoner H56441
P.O. Box 3030
Susanville, CA 96127

Juliet B. Haley
California Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004

Dated: July 27, 2006

Richard W. Wieking, Clerk
By: Monica Tutson, Deputy Clerk

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

MOTLEY,

           Plaintiff,

  v.

RUNNELS et al,

           Defendant.
_____/

Case Number: CV05-03254 MJJ

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 27, 2006, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Edward E. Motley
High Desert State Prison
Prisoner H56441
P.O. Box 3030
Susanville, CA 96127

Juliet B. Haley
California Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004

Dated: July 27, 2006

Richard W. Wieking, Clerk
By: Monica Tatson, Deputy Clerk

EXHIBIT __K

_EXHIBIT K_
9th CIRCUIT'S DENIAL "COA"

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 05 2007

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

EDWARD E. MOTLEY,

        Petitioner - Appellant,

  v.

D. L. RUNNELS, Warden,

        Respondent - Appellee.

No. 06-17257

D.C. No. CV-05-03254-MJJ
Northern District of California,
San Francisco

ORDER

Before:    SILVERMAN and CALLAHAN, Circuit Judges.

    The request for a certificate of appealability is denied. *See* 28 U.S.C.
§ 2253(c)(2).

A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

JUN 05 2007

by:
    Deputy Clerk

STAFF

INTERNAL USE ONLY: Proceedings include all events.
06-17257 Motley v. Runnels

EDWARD E. MOTLEY
        Petitioner - Appellant

Edward E. Motley
# H56441
[LD NTC prs]
HDSP - HIGH DESERT STATE PRISON
(SUSANVILLE)
P.O. Box 3030
Susanville, CA 96127-3030


    v.


D. L. RUNNELS, Warden
        Respondent - Appellee

Juliet B. Haley, Esq.
FAX 415/703-1415
415/703-5960
Suite 11000
[COR LD NTC dag]
AGCA - OFFICE OF THE CALIFORNIA
ATTORNEY GENERAL
455 Golden Gate Ave.
San Francisco, CA 94102

EXHIBIT L

EXHIBIT .L

9th CIRCUITS DENIAL - REHEARING

EXHIBIT L

EXHIBIT L

**FILED**

SEP 2 4 2007

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

EDWARD E. MOTLEY,

           Petitioner - Appellant,

   v.

D. L. RUNNELS, Warden,

           Respondent - Appellee.

No. 06-17257

D.C. No. CV-05-03254-MJJ
Northern District of California,
San Francisco

ORDER

Before:    PREGERSON and RAWLINSON, Circuit Judges.

    The motion for reconsideration is denied.  *See* 9th Cir. R. 27-10.

----------------------------------------------------

Edward E. Motley
HDSP - HIGH DESERT STATE PRISON (SUSANVILLE)
# H56441
P.O. Box 3030
Susanville, CA 96127-3030

----------------------------------------------------

gar
06-17257

EXHIBIT M

# EXHIBIT .M
## NELSON'S STATEMENT TO DEFENSE

EXHIBIT M

EXHIBIT M

# PUBLIC DEFENDER
## COUNTY OF SANTA CLARA
### REPORT OF INVESTIGATION

Defendant ___EDWARD MOTLEY___          Our File Number __92-008334__

_____          Investigation Number 6-2-1665

To_____TOM DETTMER_____          Action Date__07/13/92__ M Px  T

                                       Dictation Date__07/01/92__

SUBJECT:

> Interviewed RICKY JOAQUIN NELSON, DOB
> 10-01-77, at the California Youth
> Authority on Ramona Avenue, at
> approximately 1:15 pm, on 6-30-92.  Mr.
> Nelson gives his booking number 64385.
> He was interviewed as a possible witness
> in this case because he with the
> defendant and co-defendant at the time.
> His counselor is Archie Grant who gave
> permission for the interview at the
> northern receptions center.

Ricky originally did not want the interview tape recorded.  He
explained the following starting from the evening before the incident.

Ricky has known the Ed Motley who he calls "Ed Dog" for approximately
two years.  Both young men lived in the Sacramento area.

On this evening before the incident he was with Ed walking around in
Sacramento.  They met up with an individual known to them as "City."
Ricky does not know City's real name.  Both he and Ed had seen City
around before and Ricky recalls having talked with him one time.  He
did not know much about the man and did not consider him a friend but
rather an acquaintance.

Ricky believes that this was approximately sunset.  City wanted to go
to Oakland.  Neither Ed nor Ricky had anything else in mind to do
that night and both had family in Oakland so agreed to go.  Ricky
also said that he was on the run from the police at the time so there
for had no real reason to stay in Sacramento.

City had a car, a white colt which they drove to Oakland in.

Date: 07/06/92    Investigator: CGETTA    /jms    Supervisor:  DGB
Subject:  __RICKY JOAQUIN NELSON__
621665A
                                          Page 01 of 11

# PUBLIC DEFENDER
## COUNTY OF SANTA CLARA
### REPORT OF INVESTIGATION

Defendant ____EDWARD MOTLEY____      Our File Number  92-008334

To _____TOM DETTMER_____      Investigation Number 6-2-1665

Action Date__07/13/92_ M Px  T

Dictation Date__07/01/92_

**SUBJECT:**

City drove. They went to a hotel on McArthur and stayed the night. Ricky explained that there were no drugs or alcohol used that night.

Early the next morning Ricky was awaken, quickly grabbed his clothes and got in to the back seat of the colt. He then fell asleep. He does not know what time he got up but knows it was early.

Ricky also explained that he and Ed normally carry guns. They took those guns with them to Oakland in case someone where to shoot at them they would "Blast" back.

Ricky does not know who's idea it was to go to San Jose. He just remembers waking up or being awaken when they got to a mall. Ricky originally explained that it was evening when they got there. After talking about it however, he said that it was the evening before that he had been talking about where he was with Ed when they met City and that actually it was around noon time when they got to this mall or possibly a little earlier. He recalls that it was warm out.

They had "Rolled by" the mall Eddie was driving and Ricky was still in the back. "Dude" also known as "City" had gotten out and when he came back he continued to drive. They then drove around San Jose for a while when it was getting near time City stated "Damm, I got no money." He explained that they were running out of gas and needed to do something. Both Ricky and Ed deciding not to act as cowards decided to go along with what ever City wanted to do. City then said that he would make a plan, that they would need to take some ones money. Ricky and Ed's original thought was that City was crazy. They however, did not want a bad name back on the streets of Sacramento so figured that they would go along to do what he wanted.

He explained that they all then went in to the mall which he now knows to be Valley Fair. There they talked with a security officer briefly. All three of them came outside.

Date: 07/06/92    Investigator: CGETTA    /jms    Supervisor: DGB
Subject:  RICKY JOAQUIN NELSON
621665A                                                    Page 02 of 11

# PUBLIC DEFENDER
## COUNTY OF SANTA CLARA
### REPORT OF INVESTIGATION

Defendant ___EDWARD MOTLEY___

Our File Number __92-008334__

Investigation Number 6-2-1665

To_____TOM DETTMER_____

Action Date__07/13/92__ M Px  T

Dictation Date__07/01/92__

**SUBJECT:**

It was night time. Ricky and Ed went back to the car. City came back later in a bug. He stated "Come on, let's go." City had gotten in to the back. Ed and Ricky were in the front with Ed driving. City then took them to another mall, directing them to that mall. "Dude" told the witness to walk out and get some gas. Ricky then explained that Dude had brought back a women with him. She seemed friendly. She in fact went in to the liquor store buying them some gin and juice. His feeling was that the women wanted to be there. There had been no drinking earlier that day cause no one had any thing to drink until the women bought them the gin and juice.

Ricky then explained that he had gone to sleep and did not wake up again until they were near the hotel.

He describes City as wearing jeans that have red and brown patches of suede in the area of the pockets. City had on a black long sleeve shirt and possibly was wearing a watch.

Eddie had on a flowered disco shirt, jeans with black suede, and a Oakland A's hat. He was wearing a gold watch.

Ricky had on a LA Kings hat, a disco shirt, a black and white jacket and greenish cords. He also had a red earring, ball shaped in one ear.

I then asked Ricky where they had gotten the money for gas and he explained that first they had stopped at a mall. I asked them if them if the mall was fairly close by to where they had picked up the women and he said that it wasn't that close. That he recalled that they had gone to the mall first, to a bank, and once the money was obtained they then went to a gas station to get some gas, to a Burger King to get something to eat, and to the liquor store to get something to drink. Afterwards he then fell asleep. He said that the last thing he remember was that the women sounded friendly.

Date: 07/06/92   Investigator: _____  /jms  Supervisor: DGB _____
Subject:  __RICKY JOAQUIN NELSON__
621665A

Page 03 of 11

# PUBLIC DEFENDER
## COUNTY OF SANTA CLARA
### REPORT OF INVESTIGATION

Defendant  EDWARD MOTLEY

To  TOM DETTMER

Our File Number  92-008334

Investigation Number 6-2-1665

Action Date  07/13/92  M Px  T

Dictation Date  07/01/92

SUBJECT:

I then asked Ricky if the women seemed scared at all.  He explained that then they were on the road that she was not saying much.  She was scared like they were going to kill her.  Both *Ricky* and City had held guns and had showed them to her.  He felt that she was calm and quiet.

I then told him what he had told me was not the same information that Eddie had given his lawyer.  He then explained the following.

Both he and City had talked to the girl.  They *and* City had gone up to the drivers door where the women was with a gun.  Ricky had gone to the passenger side with a gun.  City told the women "Be calm and quiet."  He asked the women what her name was and who she was staying with.  He then ordered her in to the back seat.

City then unlocked the passenger door and Ricky also told the women to get in to the back seat and showed her gun.

*City* then got in to the VW driving.  They went across the street to the other mall where Ed was waiting.  Ed was awake.  City told Ed to drive.  City then got in to the back seat with the women.  Ricky got in to the front passenger seat.  I asked Ricky why he didn't drive and he explained that he did not know how to drive a stick shift.

As soon as he got in to the car he told Eddie that they had just kidnapped the girl.  Eddie was not happy and looked kind of scared.  Earlier Eddie had been talking about not wanting to back to the pen.

Eddie drove for some time and went to another mall which was off the highway.  There City and the women got out of the car.  When they came back City had some money.  They went directly to a gas station that where Eddie and Ricky got out and filled the tank.

Date: 07/06/92    Investigator: CGETTA    /jms    Supervisor:  DGB

Subject:  RICKY JOAQUIN NELSON

621665A

Page 04 of 11

# PUBLIC DEFENDER
## COUNTY OF SANTA CLARA
### REPORT OF INVESTIGATION

Defendant ___EDWARD MOTLEY___        Our File Number __92-008334__

_____        Investigation Number _6-2-1665_

To_____TOM DETTMER_____        Action Date__07/13/92_ M Px  T

                                   Dictation Date__07/01/92_

**SUBJECT:**

From there they drove through the Burger King.  They asked the women
if she wanted anything and she said that she wanted a diet coke.  The
rest of them then ordered and from there went to the liquor store.
The only one that got out at the liquor store was City.  When he went
in the women asked for help to Eddie.  In the mean time Ricky raised
his gun, showing it to her, and telling her to shut up.

They then drove on in to Oakland.  Most of the time the women was
made to stay with her head down.  Ricky was not aware of any sexual
activity in the back seat but then wasn't looking.

Ricky himself had been charged and ended up with a private attorney
in juvenile court he plead guilty to kidnapping and was given a five
to life with the possibility of not getting out until he was
twenty-five.  His case worker however, up at the northern reception
center said the most he could get would be three years six months) and
the least two years six months.  He is set to go to the board on July
1st and then from there to OH Closed School and then to Carl Holton.
He explained that in San Jose his juvenile counselor was Nina
Madrical.

I also talked to Ricky about his talking to the police officer.  He
explained that he did not trust the officer and the officer kept
saying that it would be best for Ricky to talk with him.  The
detective told Ricky that Eddie had already told them what happen.
When Ricky asked to see the statement however, the officer would not
show it to him and because of that Ricky said what ever he wanted to
stay and at the end told the officer that he had made up the whole
story.

I then asked Ricky if it would be okay to tape record his statement
and we would go over it one more time.  He agreed giving the
following information.

_____    _____    _____
Date: 07/06/92    Investigator: ZUETTA    /jms    Supervisor: DGB
Subject:  __RICKY JOAQUIN NELSON__
621665A                                         Page 05 of 11

# PUBLIC DEFENDER
## COUNTY OF SANTA CLARA
### REPORT OF INVESTIGATION

Defendant   EDWARD MOTLEY                Our File Number   92-008334

_____              Investigation Number 6-2-1665

To            TOM DETTMER               Action Date   07/13/92   M Px  T

                                       Dictation Date   07/01/92

**SUBJECT:**

He and the defendant, Eddie Motley had been in Sacramento.  There
they met up with City who said he wanted to go to Oakland.  Both
Eddie and Ricky had nothing else to do so agreed to go.  When they
got to Oakland they stopped at a hotel on McArthur.  Ricky does not
know the name of the hotel.  City drove to Oakland.  There was no
drinking or drugs in the hotel that night.  City was driving a white
colt.

When they got up the following morning Ricky feels it was still early
because there was a little bit of fog around and it was cold out.
City then drove to San Jose with Eddie in the front and Ricky in the
back.  Ricky fell asleep.

Ricky then explained that he had recalled getting to the mall in the
evening.  That they had looked around and as they were leaving saw
security and asked "How you doing" and got the same response.  They
had left the mall and then City drove around San Jose for most of the
day.  I asked Ricky why he didn't drive and he explained that the
Colt was a stick shift and he did not know how to drive a stick.

They rode around for a long time.  He remembers when they left
Oakland the tank of gas had been nearly full.  Now it was nearly gone.

Ricky was then asked how he could drive around the whole day if he
got to the mall in the evening.  He was asked if it could have been
early in the morning and then asked what it was like when he arrived.
Ricky then explained that it was hot.  That he thinks it was probably
around 12 or 1 pm.

He and the other two had gone in to the mall.  They were there about
twenty minutes.  He did not recall the name of any of the stores they
were in.  He was asked if he was looking for girls and he explained
that they were but did not have any luck.

_____              _____

Date: 07/06/92    Investigator: CESTA      /jms   Supervisor:  DGB

Subject:   RICKY JOAQUIN NELSON

621665A

                                              Page 06 of 11

# PUBLIC DEFENDER
## COUNTY OF SANTA CLARA
### REPORT OF INVESTIGATION

Investigation Number 6-2-1665

To_____TOM DETTMER_____    Action Date__07/13/92__ M Px  T

Dictation Date__07/01/92__

**SUBJECT:**

As they left and were in the parking lot they saw a security officers and spoke with them briefly. From there City drove around most of the day. City announced that he need money for gas.

Eddie and Ricky did not have any money. They did have guns which they normally carry with them for protection. City then indicated that they would have to get money from someone, robbing that person. Ricky explained that he and Eddie were hesitant but felt that if they turned down City's request that on the streets of Sacramento they would be known as cowards and did not want that.

Ed then was left in the car which was parked across the street from the original mall they had been to. Both City and Ricky headed across the street. They again met up with security who was coming around. Ricky felt that they did look suspicious and City then told him "Split up, split up."

They did split up for a while and then City tapped Ricky indicating for him to look in a certain direction. Ricky then saw a women putting on lipstick in either a brown or tanish bug. City indicated that he would go one side of the car and wanted Ricky to the other.

When they got to the car Ricky told the women to get in to the back seat. Ricky then stuck his gun through the window of the passenger side and told her to get in to the back seat. She got in to the back seat and City then unlocked the passenger door and Ricky got in.

As they headed out the brakes did not work and they almost hit a car. The women told them "You got to pump it. You got to pump it." She told them that they had to pump the brakes.

The women seemed friendly at that time but after a short time started getting "Paranoid and stuff."

Date: 07/06/92    Investigator: CGETTA    /jms    Supervisor:  DGB

Subject:  RICKY JOAQUIN NELSON

621665A                                    Page 07 of 11

# PUBLIC DEFENDER
## COUNTY OF SANTA CLARA
### REPORT OF INVESTIGATION

Investigation Number 6-2-1665

To _____ TOM DETTMER _____    Action Date _07/13/92_  M Px  T

Dictation Date _07/01/92_

**SUBJECT:**

After being in the womens car they drove around the corner and across the street to where "Ed Dog" was driving around. Ricky said "Hey, Hey, Hey." Then stopped and looked at the Volkswagon and realized who it was. Ricky was then asked if City had also honked the horn and he said that City had.

City then drove the Volkswagon around to the where Ed had stopped. But Ricky immediately told Ed that they were kidnapping the women. Ed said something like "Damm Man" and did not look happy.

City then got in to the passenger front seat. (This is the first time that Ricky had indicated this.) Ricky himself then got in to the back seat with the women. Ricky then indicated that he went to sleep. I asked him if he was still awake when they went to the bank and he said that they were. That the women and City got out of the car at the bank and that was when Ricky jumped in to the front seat. At that time he gave Ed more details of what they had done. Ed told Ricky "You guys are crazy." City and the women then came back. City directed them to a gas station giving Ricky the money. Ed got out to pump the gas while Ricky paid.

The women was made to keep her head down most of the time. When they drove to the liquor store City was the only one that got out. The women was asking Ed for help. Ricky showed her a gun and told her to "Shut up." Ed was talking with her trying to calm her down. She was "Paranoid." She was "Scared and stuff." Ed was trying to talk to her to keep her mind off what was going on. She was even praying.

City then came out from the liquor store with the gin and juice. He again got in to the back seat and from there they went to Burger King. They asked if she had wanted anything to eat or drink. She asked for a diet coke which was then purchased with her money for her as well as her money for everyone else's food.

Date: 07/06/92    Investigator: CGETTA    /jms    Supervisor: DGB

Subject: RICKY JOAQUIN NELSON

621665A                                    Page 08 of 11

# PUBLIC DEFENDER
## COUNTY OF SANTA CLARA
### REPORT OF INVESTIGATION

Investigation Number 6-2-1665

To _____ TOM DETTMER _____   Action Date  07/13/92  M Px  T

Dictation Date  07/01/92

**SUBJECT:**

Ricky put some gin and juice in his milk shake which he had gotten
from Burger King.  Eddie started drinking right from the bottle.
This was the first drinking they had done since the three of them got
together.

Ricky did not recall them ever stopping to go to another ATM Machine
nor does he recall the women anyone else getting out and coming back
with out the money.

Ricky then went to sleep after eating.  When he woke up they were
nearing the hotel.

Ricky was totally unaware there was oral copulation.  When I asked
him if he knew what oral copulation was he felt that it was putting
his finger or something in to the women.  When I explained what it
was he said that he had not seen that but that he had been to sleep
and had not been looking in to the back seat.

When they got to the hotel in Oakland City and the girl got out.
They were going to get one room for the four of them.  Ricky did not
know what was going to happen to the women and when asked if it was
"City's problem" he said that it was.

Ed was drinking the gin when the police came.  Ed was trying to tell
them that the man and the women had just gone to the hotel.  Ricky's
feeling is that Ed should keep his mouth shut because he didn't want
the police to know about the kidnapping.  The police however knocked
on the door but the manager did not answer.

Once the guns were found in the car both Ed and Ricky were arrested
and put in the back seat of the patrol car.  From there they were
driven to Winchells Donuts where the officers got some donuts and ate
them while preparing their report until the van wagon came to pick up
Eddie and take him to jail.

Date: 07/06/92    Investigator: CGETTA    /jms  Supervisor:  DGB
Subject:  RICKY JOAQUIN NELSON
621665A                                        Page 09 of 11

# PUBLIC DEFENDER
## COUNTY OF SANTA CLARA
### REPORT OF INVESTIGATION

Investigation Number 6-2-1665

To _____ TOM DETTMER _____ Action Date_ 07/13/92 _M Px  T

Dictation Date__07/01/92__

**SUBJECT:**

Eddie was then taken to Juvenile hall.  The last thing Eddie said
when he got out that he would put money on Ricky's books.

Ricky has had no contact with Eddie in any way since then.  He has
not heard from either though he heard that both had been arrested.

He was then again asked about the detective that had come to see
him.  He explained that he felt the officer had lied to him and
wanted to see what Eddie had said which the officer didn't show.  He
then laughed at the officer telling the officer that everything he
had said was a lie and that he was not a snitch.  He also knows that
the report was taped.

The officer tried to take a picture of him which he refused and
almost hit the officer if the officer had not stopped.  Ricky felt
the officer was playing mind games and was trying to get him to save
himself.  The officer was getting mad because Ricky would not tell
him what he wanted to know.  He also felt that the officer was crying
because he had a tear in his eye.  The officer kept telling Ricky
that Eddie had snitched him off and the best thing for him to do
would be tell the truth to help himself.

Ricky was charged in this case and plead guilty to a kidnapping.

I then again asked him to tell me the clothing and jewelry that he
believes each of the individuals was wearing.  He explained that
Eddie had on a Oakland Raider jacket and a shirt like a disco flower
shirt.  He was wearing black and white pants or possibly just black.
He had on black shoes and a black Raider jacket.  He was wearing a
gold watch.

City had on pants that had red and brown patches of suede on each
pocket.  He was wearing disco shoes and a suede jacket that matched
the pants.

Date: 07/06/92    Investigator: COETTA    /jms  Supervisor: DGB
Subject:  RICKY JOAQUIN NELSON
621665A                                    Page 10 of 11

# PUBLIC DEFENDER
## COUNTY OF SANTA CLARA
### REPORT OF INVESTIGATION

Investigation Number 6-2-1665

To          TOM DETTMER          Action Date  07/13/92  M Px  T

Dictation Date  07/01/92

**SUBJECT:**

He was wearing a hat but Ricky does not recall what kind.  As far as
jewelry he couldn't remember but thinks maybe City had an earring and
either his nose and ear.

Ricky had a red earring in his ear that was in the shape of a ball.
He was wearing a black and white jacket, a LA Kings hat which was
grey and black, a disco flower shirt with a white t-shirt underneath
and greenish cords.  He also was wearing tan Reeboc's.

Ricky understands that his clothing is presently being held by the
San Jose Police Department and would like to get them back.

Date: 07/06/92      Investigator: CGETTA    /jms   Supervisor:  DGB

Subject:  RICKY JOAQUIN NELSON

621665A                                        Page 11 of 11

EXHIBIT N

## EXHIBIT .N

COPY OF PETITION SENT
TO CAL. SUPREME COURT

EXHIBIT N

EXHIBIT N

ROUNDS FOR RELIEF

.round 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal nhancement.". *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For dditional grounds, make copies of page four and number the additional grounds in order.)*

CALIFORNIA'S SENTENCING LAW, WHICH AUTHORIZED THE TRIAL JUDGE, NOT THE JURY TO "FACT FIND" EXPOSED PETITIONER TO A GREATER SENTENCE, VIOLATING PETITIONER'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS OF THE UNITED STATES CONSTITUTION.

3.  Supporting facts:
    Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. *(See In re Swain (1949) 34 Cal.2d 300, 304.)* A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where).* *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

The Honorable Gerard I. Kettman initially sentenced petitioner to a Life plus (36) year sentence (see Ex. A), which was reduced to Life plus (30) years (see Ex. B).

The trial court relied on a complex sentencing scheme, which was based on a mixture of Penal Code sects. 667.6(d), 654, and 1170.1, and California Rules of Court rule 4.425. (see Ex. C)

Penal Code 667.6(d) requires a full, seperate, and consecutive sentence/term if the court "finds" that each violent offense happened on seperate occasions, no other reasons are required. The requirement that the court determine time, and whether or not the defendant had a reasonable oppertunity to reflect upon his actions and

(see next page et.seq)

b.  Supporting cases, rules, or other authority (optional):
    *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

"CHIEFLY" ⟶ (CUNNINGHAM v. CALIFORNIA U.S. Cal. 2007 WL 135687 (U.S. CAL), 75 USLW 4070) AND/OR ANY OTHER CASES OR RULES THIS COURT DEEMS APPLICABLE.

1 nevertheless resume sexually assaultive behavior makes
2 the court a "sole factfinder" in determining a more severe
3 sentence than ordinary.
4   The trial court relied on the criteria beneath <u>rule</u>
5 <u>4.425 of the Cal. Rules of Ct.</u> to impose consecutive sent-
6 ences, saying the Kidnap/robbery charge was indepen-
7 dent of the charged sex offenses. (see Ex. C, pgs. 14-15)
8   Here, petitioner contends that the "requirements" and
9 "criterias" stated above bear on decisions by the trial
10 court that are based on findings of fact. Petitioner also
11 contends that the trial court aggravated counts (2) and (4)
12 imposing upper terms.[1] (see Ex. C, at pgs. 16-17)
13   "The United States Supreme Court has repeatedly
14 held that, under the Sixth Amendment, any fact that
15 exposes a defendant to a greater potential sentence
16 must be found by a jury, not a judge, and establish-
17 ed beyond a reasonable doubt, not merely by a pro-
18 ponderance of the evidence". 'see <u>Cunningham v. Califor-</u>
19 <u>nia</u>, U.S. Cal. 2007 WL 135687 (U.S. Cal.), 75 USLW 4070
20   Given the facts, petitioner should not have been
21 sentenced to any upper term, nor should his sentence
22 have been ran consecutively solely by the trial court.
23 Therefore, petitioner's sentence must be properly adj-
24 usted to reflect the jury's true findings.
25
26
27

footnote 1) See Also Ex. C at pgs. 12-13.



Ground 2 or Ground __2__ (if applicable):

THE TRIAL COURT'S SENTENCING SCHEME WAS
IN ERROR...

a. Supporting facts: Petitioner's sentence must be readjusted for the following
reasons;
    1.) California Penal Code section 667.6(d) provides in part that:
        "A full, seperate, and consecutive term shall
        be served for violation of... 288(a) by force,
        duress, menace, or fear of immediate and
        unlawfull bodily injury on the victim by
        another person if the crimes involve
        seperate victims or involves the same
        victims on seperate occasions..."
    On direct appeal the California Court of Appeal rever-
sed the jury's finding that petitioner used a weapon in the
commission of the sexual assaults. Given this fact Penal Code
667.6(d) does not apply in this instance, because the force,
violence, duress, menace, or fear of unlawfull bodily injury
requirements do not exist without the use of a weapon. The facts
in this case give no indication of any kinds of threats or use of
physical force regarding the charged sexual assaults. At trial the

b. Supporting cases, rules, or other authority:
PEOPLE v. Arbee,(1983) 192 Cal. Rptr. 13; People v. Ratcliffe,(1981) 177
Cal. Rptr. 627; People v. Lawson,(1980) 165 Cal. Rptr. 764; People v.
Moore (1989) 260 Cal. Rptr. 134; and/or any other case law or
rules this court deems applicable
                2.

1  victim was asked why she orally copulated the defendant
2  and she said because she never saw him get rid of
3  the gun she alleged he pointed at her when she was ab-
4  ducted. [2](Please note that petitioner maintained that he
5  was not present at the armed abduction.) Nothing in the
6  record indicates any kind of force or violence in this
7  instance, other than the People's erroneous claim that
8  petitioner "used" a firearm.

10     2.) The dual use of the alleged facts to both en-
11  hance the punishment and impose the aggravated
12  term was in error, because _Penal Code sect. 1170(b)_
13  specifically prohibits this sentencing choice. (see
14  also, _Cal Rules of Ct. Rule 4.420 (c)_.)

16  ## GROUND #3

17        THE UNITED STATES SUPREME
18        COURT'S RULING IN "_CUNN-
19        INGHAM v. CAL_ (supra.)"CONS-
20        TITUTES A "CLEAR BREAK"
21        WITH THE PAST AND THERE-
22        FORE MUST BE APPLIED
23        RETROACTIVELY...

25     In all due respect to the superior court's ruling in re-
26  gards to _Ground 1_ of the instant petition (_see Appendix "D"_)
27  petitioner contends that the said ruling was in error for

footnote 2. PLEASE SEE EXHIBIT "D" FOR COMPLETE FACTS OF CASE... ESP-
ECIALLY AT PG. 6.

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

OSP 98 10924

3.

1 the following reasons:

2     The California Determinative Sentencing Law (DSL)
3 came into effect in 1977. The recent Supreme Court ruling
4 in <u>Cunningham</u> abolished a very essential part of the
5 DSL, which gave sentencing judges the authority to
6 enhance/aggravate a defendant's sentence based on
7 facts without the aid of a jury. Simply put, the United
8 States Supreme Court RULED this portion of the California DSL
9 unconstitional, and that California, like her sister states,
10 must adopt/develope a <u>new</u> sentencing standard that does
11 not allow a judge the "sole" authority to enhance a de-
12 fendant's sentence based upon facts. The Supreme Court
13 stated in <u>Graham v. Collins</u> (1993) 506 U.S. 461, 467 [113 S.Ct.
14 892, 122 L.Ed 2d 260] that ["A holding constitutes a
15 'new rule'. . . [only] if it "breaks new ground," impo-
16 ses a new obligation on the states or the federal gover-
17 nment,' or was not 'dictated by precedent existing at
18 the time the defendant's conviction became final." "].
19 Here, petitioner contends that the Supreme Court's ruling
20 in <u>Cunningham</u> lives up to all the requirements (as stated
21 in <u>Graham v. Collins</u>) that would constitute a <u>new rule</u>.

22     In <u>United States v. Booker</u> 2005 WL 50108 *27, *29 (U.S.)
23 the Court addressed "retroactivity" regarding a new rule
24 citing <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328, 107 S.Ct. 708, 93
25 L.Ed. 2d 649 (1987) wherein the Court stated, "[A] new rule
26 for the conduct of criminal prosecutions is to be applied
27 retroactively to all cases . . . pending on direct review

or not yet final, with <u>no exception</u> for cases in which the new rule constitutes a "clear break" with the past." petitioner takes this to mean that sense the <u>Cunningham</u> court's ruling is representative of a clear break with the past that it should be retroactively applied in this instance.

With this being said, petitioner directs the reader's attention to the superior court's <u>Denial</u> (<u>Appendix "L"</u>) wherein one of the cases relied upon is <u>People v. Amons</u> 22 Cal. Rptr. 3d 908, 913, which cites <u>Griffith v. Kentucky</u>,(1987) 479 U.S. 314, 328. 107 S.Ct. 708, 93 L.Ed. 2d 649, 661 as well, but expressed a different view than that of both the <u>Booker</u> and <u>Griffith</u> Courts, saying that, <u>even if</u> the new rule "constitutes a 'clear break' with the past" <u>it is not</u> enough to be applied retroactively. The <u>Amons</u> court also leaned toward the sentiments of the court in <u>Black</u>, which the <u>Cunningham</u> Court ruled held no precedents.

Nevertheless, petitioner is merely a layman of the law, and therefore leaves it to this honorable court to interpret the meanings of the Supreme Courts's rulings in regards to retroactivity.

## GROUND #4

[3]THE SUPERIOR COURT FAILED
TO ACKNOWLEDGE PETITIONER'S
CONTENTIONS BENEATH GROUND
TWO OF THIS PETITION. . .

Petitioner presented the exact same contentions

Footnote 3. GROUNDS ONE AND TWO ALONG WITH THE ATTACHED EXHIBITS AND APPENDIXES IS AN EXACT REFLECTION OF THE ENTIRE RECORD OF THE HABEAS SUBMITTED AT THE SUPERIOR COURT LEVEL, AND THE CAL.COURT OF APPEAL ALSO.



COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

OSP 98 10924

5.

1  beneath Ground #2 of this petition to the Superior
2  Court of Santa Clara County, (Please note that the support-
3  ing cases are not the same as those beneath Ground
4  One) yet the Honorable Judge Linda R. Condron issued
5  an order Denying the petition without giving any state-
6  ment or reason why.[4] (see Appendix 'D")
7      Petitioner respectfully submits that the Superior
8  Court erred in this regard because Cal. Rules of Ct.
9  Rule 4.551(g) specifically states that, "Any superior
10 court Denying a petition for a writ of habeas corpus
11 must contain a brief statement of the reasons for the
12 Denial. An order only declaring the petition to be
13 Denied is insufficient." .
14     Being that the superior court erred, petitioner
15 contends that at the very least, an "Order to Show Cause"
16 should issue in regards to "Ground Two" of this petition.
17 The claims are indeed meritable and failure to enter-
18 tain them would bring about due process issues,
19 which have already been given life due to the Super-
20 ior Court's error being expressed herein.
21              CONCLUSION
22     For the foregoing reasons this honorable court must
23 properly readjust petitioner's sentence to "fairly" reflect
24 the punishment.

25

26          PRAYER FOR RELIEF
27     That this honorable court order the relief being

footnote 4. PLEASE NOTE THAT THE CALIFORNIA COURT OF APPEAL DECLINED TO ISSUE
AN OPINION REGARDING THIS GROUND ("4) HEREIN WHICH WAS PRESENTED FOR THE
FIRST TIME.



COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

OSP 98 10924

1 sought herein, and or any relief this court deems just
2 and proper.

3

4     I declare under penalty of perjury that the fore-
5 going is true and correct. This was executed at <u>CCI</u>
6 in Kern County California on <u>8/5/07</u>.

7

8                              RESPECTFULLY SUBMITTED,
9                              /s/ <u>Edward E. Motley</u>
10                             /P/ <u>EDWARD E. MOTLEY</u>
11                                <u>IN PRO PERSONA</u>

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27



COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

OSP 98 10924

BEGINING OF EXHIBITS "A" -"D"

EXHIBIT "A"

INITIAL ABSTRACT OF
JUDGEMENT . . .

DEPT. No. __24__          CASE No __155474__

9215327
03-25-92
09:44

# In the Superior Court of the State of California

IN AND FOR THE _____ COUNTY OF _SANTA CLARA_____

## ABSTRACT OF JUDGMENT
(Commitment to State Prison as provided by Penal Code Section 1213.5)

The People of the State of California, )
)
)
vs )
)
EDWARD EUGENE MOTLEY )
Defendant.)
)
)

Hon _GERARD J. KETTMANN_____
(Judge of Superior Court)

_MIKE FLETCHER_____
(District Attorney)

_JEFF KROEBER_____
(Counsel for Defendant)

This certifies that on the __4th__ day of _NOVEMBER_, 19 __92__ judgment of conviction of the above-named defendant was entered as follows:

In Case No. __155474_____ Count No. __ONE_____ he/she was convicted by __JURY_____; on his/her plea of

__NOT GUILTY_____ (guilty, not guilty, former conviction or acquittal, once in jeopardy, not guilty by reason of

insanity); of the crime of _____KIDNAPPING FOR ROBBERY_____

(designation of crime and degree, if any, including fact that it constitutes a second or subsequent conviction of same
offense if that affects the sentence and if under Section 209 of the Penal Code whether victim suffered bodily harm):

in violation of ___Section 209(b) of the California Penal Code_____
(reference to Code or Statue, including Section and Sub-section);

with prior convictions charged and proved or admitted as follows:

| DATE | COUNTY AND STATE | CRIME | DISPOSITION |
|------|-----------------|-------|-------------|
|      |                 |       |             |
|      |                 |       |             |
|      |                 |       |             |
|      |                 |       |             |
|      |                 |       |             |

Defendant __was_____ charged and admitted being, or was found to have been armed with a deadly weapon at the time of commission of
(was) or (was not)

the offense, or a concealed deadly weapon at the time of his/her arrest within the meaning of Penal Code Sections XXXXXXXXXXX 12022.5(a)PC

7956A Rev 11/91

Defendant __was not__ adjudged a habitual criminal within the meaning of Sub-division __--__ of
                 (was) or (was not)
Section.

Section 644 of the Penal Code; and the defendant __is not__ a habitual criminal in accordance with Sub-division (c) of that
                                              (is) or (is not)

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the said defendant be punished by

imprisonment in the State Prison of the State of California for the term provided by law, and that he/she be remanded to the

Sheriff of the _____ County of __SANTA CLARA__ and by him/her delivered to the

Director of Corrections of the State of California at the place hereinafter designated.

It is ordered that sentences shall be served in respect to one another as follows __Count 1-PC209(a)--State Prison__
                                                                        (Note whether concurrent or consecutive as to each count):

__for a term of LIFE plus 4 years consecutive-PC12022.5(a).  Total term of committment__

__including Cnts.2,3,4,5 is LIFE + 36 years. (see additional abstract).  Advised ot Parole__

__(5 years to Life) and appeal rights.  Restitution Fund Fine waived.  Motion for new trial__

__denied.__
and in respect to any prior incomplete sentence(s) as follows: __N/A__
                           (Note whether concurrent or consecutive as to all incomplete sentences from other jurisdictions):

__Credit for time served:  184 actual + 92 (4019) = 276 total days.__

To the Sheriff of the _____ County of __SANTA CLARA__ and to the Director of Corrections:

Pursuant to the aforesaid judgment, this is to command you, the said Sheriff, to deliver the above-named defendant into the

custody of the Director of Corrections at __RECEPTION-GUIDANCE CENTER, SAN QUENTIN, CALIFORNIA__

at your earliest convenience.

Witness my hand and seal of said court

this __18th__ day of __November, 1992__ _____

STEPHEN V. LOVE _____ Clerk

by _____[signature]_____ — S. HALLAHAN _____ Deputy

SEAL

State of California,                    )ss.
                                       }
_____ County of __SANTA CLARA__ )

I do hereby certify the forgoing to be a true and correct abstract of the judgment duly made and
entered on the minutes of the Superior Court in the above entitled action as provided by Penal Code
Section 1213.

Attest my hand and seal of the said Superior Court this __18th__ day of __November__ 19 __92__

STEPHEN V. LOVE

County Clerk and Ex-officio Clerk of the Superior Court of the State of California in and for the

_____ County of __SANTA CLARA__

The Honorable: __[signature]__ GERARD J. KETTMANN _____

Judge of the Superior Court of the State of California, in and for the _____ County of

__SANTA CLARA__ _____

Note: If probation was granted in any sentence of which abstract of judgment is certified, attach a minute order reciting the fact
and imposing sentence or ordering a suspended sentence into effect.

7956C Rev 11/91

EXHIBIT "B"

AMENDED ABSTRACT OF

JUDGEMENT . . .

**ABSTRACT OF JUDGMENT – PRISON COMMITMENT**

FORM DSL 2

| ☒☒ SUPERIOR<br>☐ MUNICIPAL<br>☐ JUSTICE | } COURT OF CALIFORNIA, COUNTY OF _SANTA CLARA_ |
|---|---|
| COURT (I.D.) | BRANCH OR JUDICIAL DISTRICT: _HALL OF JUSTICE_ |

4,3,1,0,0,

PEOPLE OF THE STATE OF CALIFORNIA versus
DEFENDANT:   EDWARD EUGENE MOTLEY
AKA:

☒ PRESENT    155474    -A
☐ NOT PRESENT    -B
-C

**COMMITMENT TO STATE PRISON**
**ABSTRACT OF JUDGMENT**    AMENDED ABSTRACT ☐    -D / -E

| DATE OF HEARING (MO) (DAY) (YR) | DEPT. NO | JUDGE GERARD J. KETTMANN | CLERK D. GRECO |
|---|---|---|---|
| 10-7-94 | 29 | ~~XXXXXXXXXXXXXXXXXXXX~~ | ~~XXXXXXXXXXX~~ |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| KAREN SELLICK | MIKE FLETCHER | JEFF KROEBER, PD | DIANE KLINKE |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES (OR ALTERNATE FELONY/MISDEMEANORS):

☐ ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT _____ (NUMBER OF PAGES) _____

SENTENCE RELATION

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO DAY YEAR | CONVICTED BY COURT TRIAL / PLEA | TERM (CALIF.) | CONCURRENT | CONSECUTIVE 1/3 VIOLENT | CONSECUTIVE 1/3 NON-VIO. | CONSECUTIVE FULL | 654 STAY | PRINCIPAL OR CONSECUTIVE TIME IMPOSED YEARS MONTH |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | PC | 288a(c) | ORAL COPULATION-THREAT | 92 | 08 21 92 | X | U | | | | | | 8 0 |
| ~~3~~ | ~~PC~~ | ~~288a(c)~~ | ~~ORAL COPULATION-THREAT~~ | | | | | | | | | | |
| 4 | PC | 288a(c) | ORAL COPULATION-THREAT | 92 | 08 21 92 | X | U | | | X | | | 8 0 |

2. ENHANCEMENTS charged and found TIED TO SPECIFIC COUNTS (mainly in the § 12022-series) including WEAPONS, INJURY, LARGE AMOUNTS OF CONTROLLED SUBSTANCES, BAIL STATUS, ETC.:
For each count list enhancements horizontally. Enter time imposed for each as "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385.
Add up time for enhancements on each line and enter line total in right-hand column.

| Count | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | PC12022.3(b) | 2 | | | | | | | | | 2 0 |
| ~~3~~ | ~~PC12022.3(b)~~ | | | | | | | | | | |
| 4 | PC12022.3(b) | 2 | | | | | | | | | 2 0 |
| ~~5~~ | ~~PC12022.3(b)~~ | | | | | | | | | | |

3. ENHANCEMENTS charged and found true FOR PRIOR CONVICTIONS OR PRIOR PRISON TERMS (mainly § 667-series) and OTHER.
List all enhancements horizontally. If 2 or more under the same section, repeat it for each enhancement (e.g., if 2 non-violent prior prison terms under § 667.5(b) list § 667.5(b) two times). Enter time imposed for each as "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385. Add time for these enhancements and enter total in right-hand column. Also enter here any other enhancement not provided for in space 2.

| Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Total |
| | | | | | | | | | | |

Total term w/Ct.1:Life + 30 yrs.

4. INCOMPLETED SENTENCE(S) CONSECUTIVE:

| COUNTY | CASE NUMBER | CREDIT FOR TIME SERVED |
|---|---|---|
| | | |

5. OTHER ORDERS

JUDGEMENT AMENDED: FINDINGS OF TRUE ON USE ALLE
PER PC12022.3(a) IN CNTS 2-5 ARE SET-A
& SENTENCES BASED THEREON ARE VACATED & DISMISSED, CO
LIFTS STAY ON ARMING ENH IN CNTS 2,3,4 & IMPOSES 2 YR
MIDTERM FOR EACH ENH TO RUN CONSEC. CONTINUE STAY ON
ENH. IN CNT 5.(SEE LIFE ABSTRACT-CNT 1)

6. TOTAL TIME IMPOSED ON ALL ATTACHMENT PAGES (FORM DSL 290-A):

7. TIME STAYED TO COMPLY WITH 5-YEAR OR 10-YEAR LIMIT ON SUBORDINATE TERMS, DOUBLE-BASED-TERM LIMIT, ETC. (Do not include § 654 stays or discretionary stays of term for enhancements.)

8. TOTAL TERM IMPOSED:    26 0

9. EXECUTION OF SENTENCE IMPOSED:

A. ☐ AT INITIAL SENTENCING HEARING   B. ☒ AT RESENTENCING PURSUANT TO DECISION ON APPEAL   C. ☐ AFTER REVOCATION OF PROBATION   D. ☐ AT RESENTENCING PURSUANT TO RECALL OF COMMITMENT (PC § 1170(d))   E. ☐ OTHER _____

10. DATE OF SENTENCE PRONOUNCED (MO) (DAY) (YR)    10-7-94

| CREDIT FOR TIME SPENT IN CUSTODY | TOTAL DAYS 276* | AS OF 11-4-92 INCLUDING: | ACTUAL LOCAL TIME 184 | LOCAL CONDUCT CREDITS 92 | STATE INSTITUTIONS ☐ DMH    ☐ CDC |
|---|---|---|---|---|---|

11. DEFENDANT IS REMANDED TO THE CUSTODY OF THE SHERIFF, TO BE DELIVERED:

☒ FORTHWITH
☐ AFTER 48 HOURS, EXCLUDING SATURDAYS, SUNDAYS AND HOLIDAYS

INTO THE CUSTODY OF THE DIRECTOR OF CORRECTIONS AT THE RECEPTION-GUIDANCE CENTER LOCATED AT:

☐ CALIF. INSTITUTION FOR WOMEN – FRONTERA
☐ CALIF. MEDICAL FACILITY – VACAVILLE
☐ SAN QUENTIN
☒ OTHER (SPECIFY) Return to Calipatria State Prison
☐ CALIF. INSTITUTION FOR MEN – CHINO
☐ DEUEL VOC. INST.

*CDC TO DETERMINE CREDITS & AWARD CUSTODY SINCE 11-4-92

CLERK OF THE COURT

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

ABSTRACT OF JUDGMENT - PRISON COMMITMENT — INDETERMINATE

FORM CR 292

| ☒ SUPERIOR ☐ MUNICIPAL ☐ JUSTICE | } COURT OF CALIFORNIA, COUNTY OF __SANTA CLARA__ |
|---|---|
| COURT (I.D.) | BRANCH OR JUDICIAL DISTRICT: |
| 4 3 | |

| PEOPLE OF THE STATE OF CALIFORNIA versus | ☒ PRESENT | 155474 | – A |
|---|---|---|---|
| DEFENDANT: EDWARD E. MOTLEY | | | – B |
| AKA: | ☐ NOT PRESENT | | – C |
| COMMITMENT TO STATE PRISON | AMENDED | | – D |
| ABSTRACT OF JUDGMENT | ABSTRACT ☐ | | – E |

| DATE OF HEARING (MO) (DAY) (YR) | DEPT. NO. | JUDGE | CLERK |
|---|---|---|---|
| 10/7/94 | 29 | GERARD J. KETTMANN | D.GRECO |
| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
| KAREN SELLICK | MIKE FLETCHER | JEFF KROEBER, PD | DIANE KLINKE |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES:
☐ ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT _____ (NUMBER OF PAGES)

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO | DAY | YEAR | JURY TRIAL | COURT TRIAL | PLEA | CONCURRENT | CONSECUTIVE | 654 STAY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | PC | 209(b) | KIDNAPPING FOR ROBBERY | 92 | 08 | 21 | 92 | XX | | | | | |

2. ENHANCEMENTS charged and found true TIED TO SPECIFIC COUNTS (mainly in the § 12022-series) including WEAPONS, INJURY, LARGE AMOUNTS OF CONTROLLED SUBSTANCES, BAIL STATUS, ETC.: For each count list enhancements horizontally. Enter time imposed for each or "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385. Add up time for enhancements on each line and enter total in right-hand column.

| Count | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | PC12022.5(a) | 4 | | | | | | | | 4 | 0 |

3. ENHANCEMENTS charged and found true FOR PRIOR CONVICTIONS OR PRIOR PRISON TERMS (mainly § 667-series) and OTHER: List all enhancements based on prior convictions or prior prison terms charged and found true. If 2 or more under the same section, repeat it for each enhancement (e.g., if 2 non-violent prior prison terms under § 667.5(b), list § 667.5(b) 2 times). Enter time imposed for each or "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385. Add time for these enhancements and enter total in right-hand column. Also enter here any other enhancement not provided for in space 2.

| Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |

4. Defendant was sentenced to State Prison for an indeterminate term:
A. ☐ For LIFE WITHOUT THE POSSIBILITY OF PAROLE on counts _____    C. ☐ For 15 years to life, WITH POSSIBILITY OF PAROLE on counts _____
B. ☒ For LIFE WITH POSSIBILITY OF PAROLE on counts 01 _____    D. ☐ For 25 years to life, WITH POSSIBILITY OF PAROLE on counts _____
E. ☐ For other term prescribed by law on counts _____ . (Specify term on separate sheet if necessary.)
PLUS enhancement time shown above.

5. ☐ Indeterminate sentence shown on this abstract to be served ☐ consecutive to ☐ concurrent with any prior incompleted sentence(s).

6. Other Orders: (List all consecutive/concurrent sentence relationships, fines, etc. if not shown above)

Deft advised of parole & appeal rights. Restitution fund fine waived. Motion for new trial denied. Total term w/Cnts.2,3,4,5—Life + 30 years. (see addt'l abstract) (CDC to ~~update~~ determine credits & award custody since 11/4/92)

(Use an additional page if necessary.)

7. ☐ The Court advised the defendant of all appeal rights in accordance with rule 470, California Rules of Court. (AFTER TRIAL ONLY)

8. EXECUTION OF SENTENCE IMPOSED:
A. ☐ AT INITIAL SENTENCING HEARING    B. ☒ AT RESENTENCING PURSUANT TO DECISION ON APPEAL    C. ☐ AFTER REVOCATION OF PROBATION    D. ☐ AT RESENTENCING PURSUANT TO RECALL OF COMMITMENT (PC § 1170(d))    E. ☐ OTHER _____

| 9. DATE OF SENTENCE PRONOUNCED (MO) (DAY) (YR) | CREDIT FOR TIME SPENT IN CUSTODY | TOTAL DAYS as of 11/4/92 | ACTUAL LOCAL TIME | LOCAL CONDUCT CREDITS | STATE INSTITUTIONS |
|---|---|---|---|---|---|
| 10/7/94 | 276 | INCLUDING: | 184 | 92 | ☐ DMH    ☐ CDC |

10. DEFENDANT IS REMANDED TO THE CUSTODY OF THE SHERIFF, TO BE DELIVERED:
☒ FORTHWITH    ☐ INTO THE CUSTODY OF THE DIRECTOR OF CORRECTIONS AT THE RECEPTION-GUIDANCE CENTER LOCATED AT:    ☐ CALIF. INSTITUTION FOR WOMEN—FRONTERA    ☐ CCWF—CHOWCHILLA    ☐ CALIF. INSTITUTION FOR MEN—CHINO    ☐ DEUEL VOC. INST.
☐ AFTER 48 HOURS, EXCLUDING SATURDAYS, SUNDAYS AND HOLIDAYS    ☐ WASCO    ☐ SAN QUENTIN    ☐ R.J. DONAVAN    ☒ OTHER (SPECIFY) Return to Calipatria State Prison

CLERK OF THE COURT

EXHIBIT "C"

SENTENCING HEARING TRANSCRIPTS...

COPY

67

## TO THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SIXTH APPELLATE DISTRICT

THE PEOPLE OF THE STATE OF
CALIFORNIA,                        )
                                   )
Plaintiff-Respondent,              )
                                   )
  vs.                              )        NO.
                                   )
EDWARD EUGENE MOTLEY,              )
                                   )
Defendant-Appellant.               )
_____)

### REPORTER'S TRANSCRIPT ON APPEAL

#### FROM THE JUDGMENT OF THE SUPERIOR COURT

#### OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

#### IN AND FOR THE COUNTY OF SANTA CLARA.

#### HONORABLE GERARD T. KETTMAN,  JUDGE

#### (CASE NO. 155474)

--o0o--

A P P E A R A N C E S:

FOR PLAINTIFF-RESPONDENT:

        ATTORNEY GENERAL OF THE STATE OF CALIFORNIA.
        6000 State Building,
        San Francisco, CA.

FOR DEFENDANT-APPELLANT

        IN PROPRIA PERSONA.

#### PROCEEDINGS ON MOTION FOR NEW TRIAL AND SENTENCING
#### NOVEMBER 4, 1992

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

BEFORE HONORABLE GERARD T. KETTMAN, JUDGE

--oOo--


| | |
|---|---|
| THE PEOPLE OF THE STATE, OF CALIFORNIA, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) NO. 155474 |
| EDWARD EUGENE MOTLEY | ) ) |
| Defendant. | ) ) ) |

SAN JOSE, CALIFORNIA                    WEDNESDAY, NOVEMBER 4, 1992


REPORTER'S TRANSCRIPT OF PROCEEDINGS



APPEARANCES:

For the People:                 M. Fletcher
                                Deputy District Attorney

For the Defendant:              Jeff Kroeber,
                                Deputy Public Defender

Probation Officer:              Glenn Arima




Reported by:

CONSTANTINE CONSTANT, CSR,CM
License No. C.S.R. 1275

1

P R O C E E D I N G S

WEDNESDAY, NOVEMBER 4, 1992                MORNING SESSION

--o0o--



THE COURT:  We have a couple of matters --
rephrase that --  Three matters on the calendar.  People
versus Edward Eugene Motley, proceeding number 155474.

As I understand it, this matter is down for a
motion for new trial and for sentencing, judgment and
sentencing, and we have the Wilson and Navarette matter.
We will take Motley matter.

MR. FLETCHER:  Good morning, Your Honor.
Michael Fletcher on behalf of the people.

THE COURT:  Jeff Kroeber was here, for the
record.

MR. FLETCHER:  He is.

We probably need Mr. Motley, Your Honor.

THE BAILIFF:  What do we want?

THE COURT:  Mr. Motley.

THE PROBATION OFFICER:  Your Honor, may I
approach the bench on a matter unrelated to this?

THE COURT:  Yes, you may.

(After a pause in the proceedings.)

THE COURT:  All right.  For the record, all
parties are here in the Motley matter.  Mr. Edward Eugene
Motley is in court with counsel, the district attorney is
here.  Would you announce your presence for the record,
gentlemen, if you haven't already done so?

2

1          MR. FLETCHER:  Good morning, your Honor.
2  Michael Fletcher on behalf of the People.
3          MR. KROEBER:  Jeff Kroeber with Mr. Motley,
4  who is present.
5          THE PROBATION OFFICER:  Your Honor, Glenn
6  Arima for the probation department.
7          THE COURT:  We will hear the motion for a new
8  trial first, please.
9          Mr. Kroeber, I have read your moving papers.
10          MR. KROEBER:  Thank you very much, Your
11  Honor.  We are asking the court to grant a new trial on
12  several alternative grounds, and in particular I want to
13  ask the court this morning to grant a new trial on courts
14  three and five of the information based upon the arguments
15  and the recitation of evidence that we have set forth in
16  our brief; in particular the complete absence of any
17  physical finding or indication that there was any
18  penetration of Ms. Guthrie, the testimony of the SART
19  Nurse, we are asking that count three and five of the
20  verdict be set aside and a new trial be granted.
21          Also as to the four use allegations under
22  12022.2 -- excuse me 12022.3(a), as to counts two, three,
23  four and five, it is our position, and we have argued
24  somewhat extensively in the brief because of the
25  misinstruction first of all on the alternative ground
26  there is insufficient evidence in the record to indicate a
27  use as to counts two, three, four and five, and it is our
28  position that those findings should be set aside on that

3

1   basis.

2              Secondly, there was misinstruction on the law

3   on counts -- on the 12022.3(a) attached to two, three

4   four, and counts two, three, four and five.

5              On that basis as well we are asking the court

6   to strike those and grant a new trial, set aside those

7   findings on those four express enhancements and order a

8   new trial.

9              Lastly, based upon the court's ruling against

10  the use of the expert, we are asking for a new trial on

11  all counts the last six of our arguments, and we will

12  submit that on the arguments and the brief.

13              THE COURT:  Mr. Fletcher.

14              MR. FLETCHER:  Your Honor, has the court had

15  an opportunity to read the responsive pleadings I filed in

16  this case?

17              THE COURT:  I don't have them with me because

18  I have been shifted around, but I did review them.

19              MR. FLETCHER:  Your Honor, I don't have

20  anything really to add other than what I presented to the

21  court in the papers, and I am prepared to submit it.  I

22  have a copy if for some reason you need to look at it.

23              THE COURT:  There's been a couple of weeks

24  intervening between my reading.  I think I should look at

25  it again.

26              MR. FLETCHER:  If you would like, Your Honor,

27  I can summarize it.

28              THE COURT:  A quick summary for the record.

4

1       MR. FLETCHER:  Your Honor, as to the

2   defendant's initial argument regarding counts three and

3   five, as the court I am sure is well aware there is

4   absolutely no law and no reason for such a law that

5   physical evidence is required to sustain a verdict of

6   finding of penetration by a foreign object.

7       The testimony of Ms. Guthrey in this regard

8   was credible, compelling and the jury believed it.  The

9   reason they believed it was because it was true fact.

10  That the nurse in this case, as in hundreds, if not the

11  great vast majority of sexual assault cases, did not find

12  physical evidence of injury or trauma is only to be

13  expected due on the nature of this particular sexual

14  assault.

15      Regarding the use, the finding of personal

16  use of the firearm, Your Honor, we litigated this at the

17  trial and there is nothing new offered in this case.

18      The argument regarding the instruction, this

19  is a rehashing of the initial arguments presented by Mr.

20  Kroeber at the trial.  Nothing new is offered in that

21  regard.

22      The final argument regarding the court's

23  denial of the defense request for an identification

24  expert, Your Honor, is again a rehashing of a prior

25  argument.

26      The most important factor I think regarding

27  the identification expert, Your Honor, is when this case

28  is all boiled down, this was not an I.D. case; this came

5

1    down to Mr. Motley's acknowledgment of being in the back

2    seat of the car during the time when the sexual assaults

3    all occurred.  The identification of Mr. Motley was

4    corroborated by a plethora of other evidence.  Nearly

5    every witness who came forward there was some portion of

6    the identification that was corroborated and therefore the

7    expert was inappropriate in this case.  That was the gist

8    of my presentation.

9               THE COURT:   The matter is submitted.

10          My review of the issues raised primarily that

11   most all of these, in fact all of the issues were raised

12   both legally and factually during the course of the trial.

13          The one raised here, page 8, other than Ms.

14   "Guthrey's claim she was penetrated, there is no credible

15   evidence indicating so, and much evidence from

16   unimpeachable third party sources indicating she was

17   probably not penetrated at all."   This statement is a

18   factual statement, and one that the jury considered, and

19   there was sufficient evidence to present that issue to the

20   jury, and I can find no fault with the jury's verdict on

21   that.  In fact I can't imagine any better evidence than

22   the victim's own testimony.  And as Mr. Fletcher pointed

23   out it's not necessary to have physical corroborating

24   evidence.  I am not sure that is always possible in most

25   cases, and in this type of case you don't normally have a

26   group of witnesses sitting around watching the event

27   normally in the manner it was done here, in private.

28          So, in any event, the motion and motions are

1    denied on all grounds, so we will then proceed to

2    sentencing.

3              I wish to take a recess before sentencing

4    briefly to talk to the -- just to go over the

5    recommendtions and make sure that everything is set forth

6    correctly.  And the recommendation sometimes -- in fact I

7    have a case pending where the district attorney and the

8    probation officer have agreed that they disagreed on that.

9    I want to get that straight.

10              Anything else to be presented for the record,

11    Mr. Kroeber?

12              MR. KROEBER:  No.  We are -- we have

13    submitted our sentencing memorandum on the the court and

14    also filed letter brief on October 22nd.  We are moving to

15    strike submission of the Sacramento --

16              THE COURT:  I am willing to hear that at this

17    point.  Are you still advancing that?

18              MR. FLETCHER:  Your Honor.  Thank you.  I did

19    receive the letter brief from Mr. Kroeber.  It is

20    factually incorrect in a number of regards.

21              First and fundamentally, Mr. Motley was not

22    only arrested but he was charged with this rape crime.

23    The sentence -- the authority that Mr. Kroeber presents in

24    his moving papers indicates that mere contacts with the

25    police are not a basis which the court may appropriately

26    consider in probationary decision-making process.

27              This is not a mere contact, this is an arrest

28    in a case where the defendant was charged with rape and as

1  a result of the police being unable to reach the victim at

2  the time of the preliminary hearing it was dismissed.

3         This is a fundamentally different than the

4  authority submitted by Mr. Kroeber.  It is an appropriate

5  document to be included in the probation report, and an

6  appropriate consideration for the court.

7         Your Honor, to the extent that this is not a

8  certified document, Mr. Arima got this document from the

9  records department of this Sacramento sheriff's

10  department.  It is stamped, to the extent it can be

11  certified by such an agency, indicating it came from such

12  agency.  Mr. Arima, I am certain, if the court felt it

13  necessary, would explain how he obtained that document.

14  It is a photocopy.  There is no legal requirement that it

15  be an original.

16         THE COURT:  I don't see this is an issue of

17  law.  The law is fairly clear in this area.  I think it's

18  a matter of reliability.  I mean, if somebody comes in and

19  makes a charge and then disappears from the face of the

20  earth the only thing that's more unreliable than that

21  would be no charge at all.  So what I would want from you

22  is why should the court consider that as reliable

23  information upon which to influence a sentencing in

24  another case.

25         MR. FLETCHER:  Your Honor, I think the court

26  should legitimately be concerned about what weight it

27  should give to such a report and such a circumstances.

28         THE COURT:  That's what I am talking about.

8

1    MR. FLETCHER:  I would leave that to your
2    good judgment as to how much weight to give it.  I urge
3    the court to include it in the probationary report.  I
4    think it is entitled to some weight.  As I note in my
5    sentencing memorandum, I do not specifically ask the court
6    to use this event as an aggravating factor in the process.
7    However, in the scheme of making sure that the record
8    properly reflects the full gambit of Mr. Motley's
9    experience, I think it is appropriate.
10    THE COURT:  You have a sentencing memorandum?
11    MR. FLETCHER:  I do, Your Honor.
12    THE COURT:  Would you submit a copy of that?
13    MR. KROEBER:  Your Honor, if Mr. Fletcher is
14    done with his comments about the report from Sacramento, I
15    would move to strike all of the further comments made in
16    court today because they are not evidence.  We don't --
17    this is simply comments of counsel.
18    THE COURT:  That's all I am considering it
19    as, comments.
20    MR. KROEBER:  Okay.
21    THE COURT:  Okay.  We will take a recess
22    then.
23    I haven't had a chance to look at People's
24    comments.  This was filed on October 22nd.  I was in a
25    much pleasanter place on October 22nd.  Not to say this is
26    unpleasant, but not as pleasant.
27    (Recess taken.)
28    ////

9

1          THE COURT:  All right.  For the record.  All

2    parties are present the defendant is present.  This is the

3    time set for review of probation report, pronouncement of

4    sentence.

5          Before we get into that, good morning, Mr.

6    Motley.

7          THE DEFENDANT:  Good morning.

8          THE COURT:  How are you this morning?  Did

9    you have anything you want to say to the court, you

10    personally?  The reason I am asking you is there is

11    something about a Marsden motion that you had mentioned in

12    front of Judge Brown?

13          THE DEFENDANT:  It's too late now.

14          THE COURT:  All right.  Don't worry about it.

15    I will proceed then.

16          Is there any legal cause why judgment should

17    not -- the court should not proceed with judgment, Mr.

18    Kroeber?

19          MR. KROEBER:  None, other than that outlined

20    on the motion for new trial the court heard earlier this

21    morning.

22          THE COURT:  And is formal arraignment for

23    judgment and sentence waived.

24          MR. KROEBER:  They are waived,  Your Honor.

25          THE COURT:  I have read and considered the

26    probation report and the supporting documents, and this

27    matter comes before this court today following a

28    conviction of the defendant by a jury.  The court is well

10

1    acquainted with the facts.  Is there anything that you

2    would like to say, Mr. Kroeber, in addition to or in

3    connection with the recommendations of the probation

4    officers report?

5            MR. KROEBER:  Your Honor, did the court have

6    an opportunity to review our sentencing memorandum, the

7    written memorandum?

8            THE COURT:  I did do that, yes.

9            MR. KROEBER:  Okay.  To briefly summarize our

10   position, Your Honor, as outlined in our sentencing

11   memorandum which we filed on October 19th, it is our

12   position that the court doesn't really have the power

13   to -- should not but probably doesn't have the power to

14   sentence pursuant to 12022.3(a), the use is on counts two,

15   three, four and five, and appropriate sentencing on the

16   findings and the special allegations there are on

17   12022.3(b).  That's the first section in our argument in

18   the sentencing memorandum.

19           We have had discussions in chambers, and I

20   have urged the court in our sentencing memorandum, we

21   asked the court to impose the sentence on the terms in

22   counts three and five concurrent to counts two and four.

23   We have had extensive discussions in chambers this morning

24   regarding the sentencing choice the court will make on

25   counts three and five, and the court has indicated it

26   intends to make a sentencing choice leading to imposition

27   of consecutive terms on three and five.

28           THE COURT:  Well, I don't want to interrupt

11

1  you, but on all of these points I am keeping a wide open

2  mind.  We did discuss the parameters upon which the court

3  could operate, because I haven't decided precisely whether

4  they will be consecutive or not.  I would prefer that you

5  go ahead with your argument.

6          MR. KROEBER:  Okay.  Our request, Your Honor,

7  is that on counts three and five that the terms on those

8  counts be run concurrent to the respective terms on counts

9  two and four; that the court use the 12022.3(b) two-year

10  term on counts two, three, four and five, and that the

11  court choose the midterm on the special allegation on

12  count one which is the 12022.3(a) use.  I will submit it

13  on that.

14          THE COURT:  Okay.

15          MR. FLETCHER:  Your Honor, we had an

16  opportunity in chambers to go over the options the court

17  had here.  I have submitted a sentencing memorandum and I

18  know the court has had an opportunity to review that.  The

19  only other -- unless you have anything in particular other

20  than what I have stated in my memorandum I will happily

21  address any particular issue.  Ms. Guthrey is present in

22  court.  I asked her if she desired to make a statement.

23  She indicated she would not.  I think having gotten to

24  know her a bit, I have seldom seen so much courage out of

25  such an occurrence this person was required to go through.

26  This has tragically affected her life.  But for the fact

27  she has close friends, she would suffer lifelong scars.  I

28  have a lot of hope those will heal with time.  I know she

12

1  would like to move on with her life.

2           THE COURT: I agree with you. She's been a

3  brave person and I acknowledge her presence in court.

4  She's been remarkably brave, and I accept your statement

5  that she will be harmed for life.

6           I don't see how anyone can go through an

7  experience like this without residuals of a heavy nature.

8  I take that into account in sentencing.

9           One of the things I also take into account is

10 the youth of the defendant. I am not going to consider

11 the probation, juvenile probation because the juvenile

12 probation also compared to the offenses charged in this

13 case, the things he is on probation for is very minor.

14 But on the callousness as one of the factors that must be

15 considered, that's not been mentioned in the probation

16 report in any way, or by the attorneys in any way, but

17 what impressed me during the course of the trial was the

18 concept of callousness. The defendant did not testify.

19 The defendant used his statement to the police officer as

20 the substitute for his testimony in court, which he has a

21 right to do, and counsel handled that very well. But in

22 not one instance was the victim in this case ever referred

23 to in any way other than  would indicate she was anything

24 more than a bitch, and those are the words that the

25 defendant used: "The bitch. The bitch. The bitch. The

26 bitch shows up." He's treating her like she was some

27 cur dog, not like a human being, and that has stood out in

28 my mind during this entire time. And it is a factor when

13

1  I consider aggravations in this case, a factor I take into

2  account.

3          Just a brief statement for the record and for

4  the victim and the interested parties:

5          If the defendant was charged with a battery,

6  a slap in the face, there is an appropriate remedy for it.

7  If the defendant was charged with shooting someone then

8  there is an appropriate remedy, and if the defendant is

9  charged with rape there is no appropriate remedy.  In

10 other words, we are going up in degrees of things, and

11 rape is a very harsh, terrible crime to commit on any

12 person.  The law does take care of that in the sentencing,

13 so if somebody disagrees with the court's sentence because

14 it isn't the hardest, most severe sentence the court could

15 give in the world, it's because the law already provides

16 for appropriate sentences.  Those are just preliminary

17 comments.

18          With regards to further comments by counsel,

19 the sentencing procedures under the law are very compex.

20 I intend to go through these by the numbers carefully, and

21 I invite counsel to assist the court if it appears that we

22 are drifting away from the numbers procedure and not

23 stating something correctly.

24          The first thing to consider is whether or not

25 this is a probation case.  It is not, and the reasons are

26 numerous, and I am citing from Mr. Fletcher's memo:

27          The defendant is not eligible for probation

28 because he was convicted of using a gun during the kidnap

14

1  for robbery, and also because of the forcible sex crime

2  charges of which he was convicted.

3          I am finding that counts two and three are

4  separate acts from the circumstances from counts four and

5  five, because in the court's view they occurred on

6  separate occasions, and this brings into play section

7  667.6(d), if the court wishes to use that.  In any event,

8  the court finds the violent sex crimes alleged in counts

9  two through five occurred on two separate occasions. Count

10  two and three was the first occasion, the second occasion

11  includes the offense alleged in counts four and five.

12          If I am going too fast let me you know, Mr.

13  Reporter.

14          The court finds these offenses occurred on a

15  separate occasions because the defendant did have a

16  reasonable opportunity to reflect on on his actions on the

17  original set of facts.  Based on these facts, the first

18  and second occasion are separate in time and by location.

19  The first occasion occurred during the drive from the

20  original abduction from the parking lot of the Valley Fair

21  mall until the defendant and victim arrived several

22  minutes later at the gas station.

23          The second occasion occurred several minutes

24  later and at a completely different location several miles

25  away.  The intervening happening in this case was the

26  stopping at the service station where obviously such

27  conduct would be observed by service station attendants.

28  The second set of sex crimes did not begin until after the

15

1   defendant and the victim had left the gas station and

2   driven several miles down the freeway and stopped at the

3   Newpark Mall.

4           Therefore, the court must impose full,

5   separate and consecutive sentences for the offenses

6   alleged in counts two and four because they involved the

7   same victim but on separate occasions. The court is

8   running these sentences consecutive.

9           The defendant was convicted of one count of

10  P.C. 209(b).  In addition, he was convicted two counts

11  each of violating 288a(c) and 289 of the Penal Code, which

12  are sex offenses.

13          The court has considered the criteria

14  affecting the imposition of concurrent or consecutive

15  sentences as set forth in rule 425 and finds in the crimes

16  alleged in counts one, and those alleged in counts three

17  and five, the court finds that the objectives were

18  predominantly independent of each other.  In counts one

19  the objective to rob; in  counts three and five the

20  objective was for sexual gratification.  In addition, they

21  involved separate acts of violence.  Therefore, the court

22  will impose a consecutive term for count one.

23          As to the crimes alleged in count three and

24  five, the court finds that they were committed at

25  different times and places and the crimes involved acts

26  including a high degree of callousness and the defendant's

27  reference to the victim as "a bitch" adds to my conclusion

28  on this point.

16

The court will now go to --

MR. FLETCHER:  Your Honor, as a result therefore the court is going to impose a consecutive term on count three and five to any other term it intends to impose?

THE COURT:  I intend to do that for the record, yes.

As to count two, it's the judgment of the court that the defendant serve eight years in the county jail (sic.), the range being three, six and eight, eight years is the aggravated term.

The probation report sets forth the circumstances in aggravation.  The one that the court is relying on is (a)(1).  The crime involved great violence great bodily harm, threat of great bodily harm, et cetera.

(a)(3), the victim was particularly vulnerable.  In this case she was apprehended getting into her vehicle in a lonely spot in the parking lot.  She is a female type, and the defendants, two males, were of far superior strength.

The defendant -- Under (a)(5) the defendant induced a minor to commit or assist in the commission of the crime.

Under (a)(8), the manner in which the crime was carried out indicated planning sophistication and professionalism, particularly planning; that they cased the joint so to speak, hey more or less knew what they were doing.  They had a car over at Town and Country

17

1  waiting for them.

2           (b)(1), the defendant engaged in violent

3  conduct which indicates serious danger to society.

4           (b)(2), the defendant's prior convictions as

5  an adult and as a juvenile are of an increasing

6  seriousness in nature.

7           MR. FLETCHER:  Your Honor, were there other

8  factors?

9           THE COURT:  No.

10          MR. FLETCHER:  Is the court finding that --

11 the court is finding those factors to apply in this case?

12 I am asking if the court is also finding any one of these

13 factors would be sufficient to warrant the imposition of

14 the aggravated term.

15          THE COURT:  I would and I do.  And these

16 factors in aggravation relate to count two and count four.

17     I will repeat them later.

18          In addition to eight years, count two, the

19 court is imposing an added sentence, enhancement sentence

20 under 12022.3(a).  What I am doing in this case is picking

21 the mitigated -- correction:  the middle term, which is

22 four years.  The probation officer and the district

23 attorney both argued for five years, and I think

24 justifiably, if I were in the D.A.'s position.  However,

25 considering the nature of the crime charged and convicted

26 of in this case, I think four years is most just and

27 appropriate.  That's a total of twelve years as to count

28 two.

18

1    As to count three, --

2    MR. FLETCHER: Excuse me Your Honor, on count

3    two there is also the allegation under 12022 --

4    THE COURT: Oh, thank you. There is the

5    further allegation under 12022.3(b). The court's selects

6    the midterm of two years there. However, that must be

7    stayed pursuant to 354, that's the arming, and the use, I

8    understand can be both used --

9    MR. FLETCHER: It should be stated pursuant

10   to 654 of the penal code.

11   THE COURT: Oh, 654. So now we are getting

12   down to count two. The district attorney argued, --

13   MR. FLETCHER: Count three, Your Honor.

14   THE COURT: Or count three -- Sorry --

15   count two which is the next one, or count three is number

16   two.

17   I decided that under the circumstances of

18   this case that the court would impose a sentence on count

19   three and on count five pursuant to 1170.1 of the Penal

20   Code, in which event the sentence would be one-third of

21   the midterm, which midterm is six years; so, one-third of

22   that is two years.

23   The court further adds an enhancement under

24   12022.3(a) of four years, being the mid of that

25   enhancement, to run consecutive to the two years, which

26   makes that a total of -- that's six years.

27   MR. FLETCHER: Your Honor, the term on count

28   three is to be served consecutive as to count two as

19

1  stated earlier?

2          THE COURT:  That's correct.  Thank you,

3  counsel.  The further allegation under 12022.3(b), being

4  armed, that is stayed pursuant to 654 of the penal code.

5          MR. FLETCHER:  Are you setting the midterm on

6  that two years and staying it, your Honor.

7          THE COURT:  Yes, I believe that so far that

8  takes care of counts two and three.

9          We will now drop down to count four and five

10 which will run consecutive.

11         The court imposes the eight years for

12 violation of 288a(c).  The aggravating factors are set for

13 the in the probation report as just narrated which I find

14 to be sufficient any one of which.  There is an added

15 enhancement to run consecutive.  I am selecting the

16 midterm of four years, that's a total of twelve years, one

17 consecutive to the other.  I will try to go over these

18 again in summary.  Count five, --

19         MR. FLETCHER:  Excuse me, your Honor.  On

20 count four you have selected the aggravated term, and the

21 reason for selecting the aggravated term on count four are

22 the same reasons that you stated for aggravating the term

23 on counts two and three, you find they apply to count four

24 and five, also?

25         THE COURT:  I think I stated that, but I do

26 state it.

27         There is a further -- did I stay under

28 12022.3(b)?  That is two years midterm, stayed.

20

1        So what we end up with, count four is eight

2   years on the 288(a), plus four years consecutive on the

3   enhancement, for a total of twelve years.

4        On count five again, I am proceeding under

5   1170.1 of the Penal Code, defendant is ordered to be

6   imprisoned for a period of one-third of the midterm, the

7   midterm is six years, therefore that is two years.

8        In this case there are added enhancements

9   12022.3(a), 12022.3(b).  Now evidence was presented to the

10  jury which resulted in the jury making findings as to

11  count five.  The defendant both was armed and used a

12  weapon.  The court finds on a review of that evidence that

13  there was substantial and sufficient evidence under the

14  law for the jury to make that conclusion, and I ruled on

15  those points during the course of the trial and later

16  today on a motion by the defendant.  But, nevertheless, I

17  feel that would be in the interests of justice, first,

18  that the weapon clearly was used in the first instance on

19  the on the apprehension of the victim, clearly she

20  responded to his presence, and it was hidden and out of

21  the way on the second series of offenses, and I have

22  considered that in the interests of justice under 1385,

23  that is it is appropriate to strike the enhancements under

24  12022.3(a) and 12022.3(b), and they are stricken.

25        MR. FLETCHER:  As to five only; is that

26  correct?

27        THE COURT:  As to count five only.  So as to

28  count five the total term to be served by the defendant is

21

1    two years.

2                We will now back up and go over this all

3    again:

4                As to count two, imposition of eight years is

5    imposed, plus consecutive term of four years under the

6    enhancement provision, which is twelve years total.

7                As to count three, it is two years, plus the

8    enhancement of four years, a total of six years, the

9    enhancement to run consecutive.

10               As to count four, eight years on the 288(a)

11   plus four years on the enhancement consecutive for a total

12   of twelve years, and on count five two years under 1170.1.

13               As to count five, two years.  The 12022.3(a)

14   and (b) are stricken by 1385  of the Penal Code.  So that

15   brings it to two-years .

16               We add all that together, thirty-two years.

17               The court further finds, proceeds now to

18   impose judgment and sentence under count one 209(b).

19               I have already indicated that this should run

20   consecutive, the defendant to be sentenced for the term

21   provided by law which is life.  The court has concluded

22   the enhancement 12022.5(a) the midterm of four years is

23   appropriate, so that's life plus four years.  Adding the

24   four years to the previous thirty-two years, the total

25   term to be served by the defendant is life plus 36 years.

26               The defendant is entitled to credits for time

27   served a hundred and eighty-four actual days, ninety-two

28   days pursuant to 4019 of the Penal Code, for a total of

22

1    two hundred and seventy-six days.

2              The defendant is advised that he will be

3    subject to parole of five years to life.

4              The restitution fine provided by 13967 of the

5    Government Code is ordered waived in the interests of

6    justice.

7              The defendant is further advised that he has

8    the right to appeal the proceedings; that he has a right

9    to a free transcript of all proceedings; he has a right to

10   the services of a court-appointed attorney, and that any

11   appeal from the judgment of this court must be filed with

12   the clerk of this court within sixty days from and after

13   this date.

14             MR. KROEBER:  Your Honor, in regards to Mr.

15   Motley's health, and in light of his age, could the court

16   order housing at CYA?

17             THE COURT:  Well, I am not opposed to that

18   type of thing, but I hesitate to take that up now.  Did

19   you want to comment on that?

20             THE PROBATION OFFICER:  Your Honor, I believe

21   he is not eligible on two bases:  One is a life term, but

22   also significantly, were that not there, if he could not

23   complete half the time before he is twenty-five, the youth

24   authority would be very reluctant to accept him anyway.

25             THE COURT:  I'm denying that request at this

26   time for the reasons stated, without prejudice, however.

27             Is there anything else that should be on the

28   record that wasn't set forth?

23

1          MR. FLETCHER:  I don't think so, your Honor.

2          THE COURT:  I have advised him of his appeal

3    rights, his right to an attorney, et cetera.

4          Okay the defendant is remanded to the --

5          THE DEFENDANT:  I am filing an appeal, man.

6          THE COURT:  -- Department of Corrections.

7    The sheriff of this county is to transport him.

8               (Hearing concluded.)

EXHIBIT "D"

STATEMENT OF FACTS...

**BOURDON & REISMAN**
Attorneys at Law
by: **ALEX REISMAN**
861 Bryant Street
San Francisco, CA 94103
(415) 626-5134

Attorney for Defendant and Appellant
**EDWARD MOTLEY**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ) <br><br> Plaintiff and Respondent, ) <br><br> v. ) <br><br> EDWARD MOTLEY, ) <br><br> Defendant and Appellant. ) | No.  H010667 <br><br> Santa Clara Superior Court Case No.  155474 <br><br> APPELLANT'S OPENING BRIEF |

### APPELLANT'S OPENING BRIEF

### STATEMENT OF THE CASE

On August 5, 1992, the Santa Clara County District Attorney's Office filed a five count second amended information against appellant, Edward Eugene Motley, relating to events that occurred on or about March 10, 1992.

Count 1 charged that appellant committed kidnapping for robbery, with an enhancement allegation for personal use of a firearm (Pen. Code, §§209(b), 12022.5(a)). (C.T. 130.) Count 2 charged that appellant committed oral copulation (Pen. Code, §288a(c)). (C.T. 130-131.) Count 3 charged that appellant committed penetration by foreign object (Pen. Code, §289(a)). (C.T. 131.) Count 4 charged that appellant committed oral

1

copulation (Pen. Code, §288a(c)).  (C.T. 132.)  Count 5 alleged
that appellant committed penetration by foreign object (Pen. Code,
§289(a)).  (C.T. 132-133.)  Counts 2 through 5 each included
enhancement allegations for personal use of a firearm, and being
armed with a firearm (Pen. Code, §§12022.3(a), 12022.3(b)).  (C.T.
130-133.)

On August 5, 1992, appellant was arraigned in the Santa Clara
County Superior Court on the above-described information and pled
not guilty to all charges.  (C.T. 135.)

On August 6, 1992, a jury trial commenced in the Santa Clara
County Superior Court, the Honorable Gerard J. Kettmann presiding.
(C.T. 141.)  The trial lasted 11 court days.  (C.T. 143-246.)

On August 12, 1992, the trial court heard and denied
appellant's motion to dismiss counts 3 and 5, and the use and
arming enhancements for counts 2 through 5, pursuant to Penal Code
section 1118.1.  (C.T. 148.)

On August 21, 1992, the jury returned verdicts of guilty as to
all five counts and found all enhancement allegations to be true.
(R.T. 246-255.)

On November 4, 1992, the trial court heard and denied
defendant's motion for new trial.  (Proceedings on Motion for New
Trial and Sentencing, November 4, 1992, pp. 1-6.)  On the same
date, the trial court sentenced appellant to life plus 36 years in
state prison, determined as follows: an 8 year sentence for
violation of Penal Code section 288a(c), with a 4 year enhancement
pursuant to Penal Code section 12022.3(a) for a total term of 12
years as to count 2; consecutive to a 2 year sentence for a
violation of Penal Code section 289(a), with an enhancement of 4

2

years for violation of Penal Code section 12022.3(a) for a total term of 6 years as to count 3; consecutive to an 8 year sentence for violation of Penal Code section 288a(c) with a 4 year enhancement pursuant to Penal Code section 12022.3(a) for a total term of 12 years as to count 4; consecutive to a 2 year sentence for violation of Penal Code section 289(a) for a total term of 2 years as to count 5; consecutive to a sentence of life for violation of Penal Code section 209(b), with a 4 year enhancement pursuant to Penal Code section 12022.5(a) as to count 1. (C.T. 338-339.) Sentences on the arming enhancements to Counts 2, 3 and 4 for violation of Penal Code section 12022.3(b) were stayed pursuant to Penal Code section 654, and the use and arming enhancements to count 5 were dismissed pursuant to Penal Code section 1385. (C.T. 338.)

On December 28, 1992, appellant filed a timely notice of appeal from the final judgment of conviction. (C.T. 342.)

### STATEMENT OF FACTS

I. PROSECUTION CASE

A. Testimony Of Kimberly Guthrie

Kimberly Guthrie testified that in March 1992, she was a manager for The Limited store in the Valley Fair Shopping Center. (R.T. 84.) On March 10, 1992, at about 4:00 p.m., she left work to attend an off-site meeting. (R.T. 87-88.) The meeting concluded at about 6:15 p.m., and she returned to Valley Fair at about 6:30 p.m. (R.T. 89.) Shortly thereafter, she got into the driver's seat of her car, a 1974 Volkswagen Bug, and began applying some make-up. Then a black man, whom she had never seen before, swung the driver's door open, pointed a gun at her and told her to move

3

over.  (R.T. 89-90.)  Ms. Guthrie testified that the gun was a black revolver.  (R.T. 111.)  Another man approached from the passenger's side and asked her to unlock the door and get into the back seat.  (R.T. 91.)

After Ms. Guthrie complied, the passenger went through her purse (which contained only a dollar) and asked where her money was.  (R.T. 91-92.)  Then, without removing any of the money in the purse, the passenger handed Ms. Guthrie's wallet to her and she produced an ATM card.  (R.T. 92.)

Ms. Guthrie testified that the driver asked for her keys, she gave them to him, and they drove off.  (R.T. 94.)  She was then taken to the Town and Country Mall across the street from Valley Fair.  (R.T. 95.)  There, Ms. Guthrie got out of the back seat of her Volkswagen, and was directed to a second car, a white Dodge Colt.  (R.T. 98.)  According to Ms. Guthrie, the driver of her car got into the back seat of the Colt, and the passenger in her car got into the front passenger seat of the Colt.  A third man occupied the driver's seat.  (R.T. 98.)

At trial, Ms. Guthrie identified a sketch of Thomas Watkins[1] as the driver of the Dodge Colt.  (R.T. 108.)  She was also asked to examine a photograph of a black male, later stipulated to be Ricky Nelson, whom she mistakenly identified as appellant.  (R.T. 109, 213.)  However, after further questioning, she testified that it was not appellant.  (R.T. 109.)  Ms. Guthrie then identified the photo of Nelson as the passenger in the Colt.  (R.T. 110, 213.)  Ms. Guthrie identified appellant as the person seated next to her

---

[1]    The parties stipulated that Thomas Watkins fled the state of California soon after the incident.  (R.T. 402.)

4

in the back seat of the Colt, and the person who approached the driver's side of her Volkswagen. (R.T. 100.)

According to Ms. Guthrie, while they were parked at the Town and Country Mall, the men said that they did not have any gas, and asked her where her ATM card could be used. (R.T. 99.) Although Ms. Guthrie suggested a nearby Great Western Bank, the men decided to leave the area and drove north on Highway 880 toward Oakland. (R.T. 99-100.)

Ms. Guthrie further testified that after leaving Town and Country, appellant forced her to orally copulate him, fondled her breasts and penetrated her vagina with his finger. (R.T. 101-103.)

According to Ms. Guthrie, their first stop was at a gas station near the freeway, where they purchased $3.00 worth of gas. (R.T. 104.) She further testified that the alleged sex acts stopped as they pulled off the freeway, at which time she was told to lay down in the back of the Colt. (R.T. 104.)

They next stopped at the New Park Mall where Watkins asked Ms. Guthrie for her ATM code. (R.T. 105-106.) After she provided her code number, Watkins and Nelson got out of the car to get money from her account. (R.T. 107.) The parties stipulated that on March 10, 1992 at 7:39 p.m., a $200.00 withdrawal was made from Ms. Guthrie's bank account from an automated teller machine at the Bank of America branch at New Park Mall. (R.T. 159, 612.) Ms. Guthrie further testified that while Watkins and Nelson went into the mall, appellant again had her orally copulate him as he fondled her breasts and penetrated her vagina with his finger. (R.T. 110.)

Ms. Guthrie acknowledged that she never saw the black revolver after she entered the Dodge Colt at the Town & Country Mall, nor

5

did appellant refer to the revolver or any other gun during the drive to Oakland. (R.T. 200.) Nevertheless, Ms. Guthrie testified that she participated in the sexual acts with appellant because of the gun, which she believed appellant still possessed because she never saw him get rid of it. (R.T. 112.)

According to Ms. Guthrie, after Watkins and Nelson returned to the Colt, they drove to a nearby Burger King and ordered food. (R.T. 112-115.) Next, they went to a liquor store where Watkins and Nelson got out and bought a bottle of gin and juice. (R.T. 116-117.) Then they stopped at a gas station and put more gas in the car. (R.T. 117.)

After getting gas, they got back on the highway to go to Oakland. (R.T. 118.) According to Ms. Guthrie, after they arrived at Oakland, Watkins and appellant switched positions and appellant began driving around. (R.T. 118.)

Next, they stopped at an Oakland motel where Ms. Guthrie was instructed to go to the motel office with Watkins. (R.T. 134.) However, as Watkins and Ms. Guthrie approached the motel registrar window, Watkins took her by the arm and said, "Come on we are getting out of here. I don't want to get arrested." (R.T. 134-135.) At this time, Ms. Guthrie observed two men with flashlights approach the Dodge Colt. (R.T. 135.) She believed the men were police officers. (R.T. 136.)

Watkins and Ms. Guthrie then went to a nearby liquor store where Watkins asked to use the phone to call a cab, and Ms. Guthrie requested to use the restroom. (R.T. 136.) A woman at the counter said there was no way a cab would come to that area, and denied Ms. Guthrie's request to use the restroom. (R.T. 137.)

6

Watkins and Ms. Guthrie then went a few doors down to a nearby church in order to use the telephone. (R.T. 137.) While in the church, Ms. Guthrie and the pastor began discussing religion with Watkins. (R.T. 138.) As a result of this discussion, Watkins began crying heavily. (R.T. 138.)

From the church, Ms. Guthrie called Sunnyvale, California and spoke to Jeff Esguerra, a singles pastor in her church and friend. (R.T. 141.) Esguerra later arrived at the church with pastor Stewart Nice and Jeff Cooper. (R.T. 141.) Ms. Guthrie was then taken to Esguerra's home in Sunnyvale. (R.T. 141.) During the ride to Sunnyvale, she did not discuss the assaults with anyone. (R.T. 142.) However, after arriving at the Esguerra residence, she told Jeff Esguerra's wife, Allison, what had happened. (R.T. 142.) The Sunnyvale police were then contacted and Ms. Guthrie described the alleged sexual assaults and her assailants. (R.T. 142, 145.)

According to Ms. Guthrie, appellant was wearing a black baseball cap with a Raiders emblem, a black Raiders jacket, and blue jeans with black suede patches from thigh to knee. (R.T. 146.) In court, she identified a dark green A's hat, Raiders jacket and a pair of jeans with black leather suede patches, as those worn by appellant that evening. (R.T. 147-148.)

Ms. Guthrie testified that the man who had threatened her with a gun and drove her Volkswagen wore a gold studded earring in his left ear. (R.T. 177.) However, the prosecutor stipulated that appellant's ears were not pierced. (R.T. 185.)

Prior to her identification of appellant at the preliminary hearing, Ms. Guthrie had been shown two Polaroid photographs of him. (R.T. 219-221.) She was not shown any other photographs, nor

was she presented with a physical line-up. (R.T. 221.)  When Ms. Guthrie identified appellant at the preliminary hearing, he was the only black male in the courtroom. (R.T. 221.)

B.   Corroboration Of Ms. Guthrie's Out Of Court Accusations

Jeffrey Esguerra, a single's pastor with the Coastline Church, testified that he was a close friend of Ms. Guthrie. (R.T. 291-292.)  On March 10, 1992, at about 11:00 p.m., he received a phone call from Ms. Guthrie. (R.T. 292.)  Although she sounded normal, she said she had been kidnapped and asked Esguerra to come pick her up. (R.T. 292-293.)  After receiving the phone call, Esguerra, senior pastor Stewart Nice and Jeff Cooper, a member of the church, went to Oakland to pick her up. (R.T. 293-294.)

According to Esguerra, during the trip to Sunnyvale, Ms. Guthrie asked what had happened at the singles' meeting that night, but did not speak about the alleged kidnap. (R.T. 296.)  After they arrived at Esguerra's home, Ms. Guthrie collapsed and started crying hysterically. (R.T. 296.)  She then spoke to Esguerra's wife, Allison, who called the Sunnyvale Police. (R.T. 296-297.)

Allison Esguerra testified that when Ms. Guthrie arrived at her home, she told Allison that she had been kidnapped by three black men who had threatened her with a gun. (R.T. 305, 307.)  When Allison asked Ms. Guthrie if she had been sexually assaulted, she nodded, yes, and hung her head. (R.T. 307.)  At that point, they called the Sunnyvale Police. (R.T. 307.)

C.   Police Investigation

Alfredo Nisperos, a security guard at Valley Fair Shopping Center, testified that on March 10, 1992, at about 3:00 p.m. he observed a white Colt with three black males inside. (R.T. 63-65.)

8

Nisperos suspected that they may have been shoplifters and recorded the car's license plate (2JBV503) in his daily activity log. (R.T. 66, 69.)    He last observed the car at 5:07 p.m.    (R.T. 77.) Nisperos further testified that he did not see any weapons or bulges that looked like weapons, and he could not identify any of the men in the car beyond his general description that they were black males. (R.T. 74, 81.)

Timothy Shaver, an Oakland Police Officer, testified that on March 10, 1992, at 9:30 p.m., he was in the 10000 block of McArthur Boulevard in East Oakland. (R.T. 231-233.)    At that time, he observed appellant in the driver's seat and Ricky Nelson in the front passenger seat of a Dodge Colt. (R.T. 234-235.)    As Off. Shaver approached the car, Nelson appeared to be trying to conceal something. (R.T. 236.)    Off. Shaver searched the vehicle and found a small white handled pistol underneath the front right passenger seat of the Colt.    (R.T. 237.)    He also found a .38 caliber revolver partially concealed in the hatchback area toward the rear of the vehicle.    Both weapons were loaded.    (R.T. 238, 256.) Nelson and appellant were then arrested.

Off. Shaver testified that at the time of appellant's arrest, he was wearing an A's cap, floral shirt, jeans with leather patches in the thigh area, and claimed to own a Raiders jacket found in the vehicle. (R.T. 240.)    Appellant was then cited and released for a misdemeanor offense. (R.T. 247.)

According to Off. Shaver, neither the black revolver nor the pint of gin found in the Colt were submitted for fingerprinting. (R.T. 258, 273.)    He had no intention of having the firearms tested for fingerprints because several officers had handled them.    (R.T.

9

286.)

Detective Kenneth Barker of the San Jose Police Department testified that he obtained the license number of the Dodge Colt from Mr. Nisperos, and was able to identify the occupants through information provided by Off. Shaver. (R.T. 390.) He further determined that Ricky Nelson remained in custody, and that appellant had been released. (R.T. 391.) Det. Barker then located the owner of the Colt, Brandon Maronui, a Sacramento resident. (R.T. 392.)

On March 20, 1992, Det. Barker and San Jose Police Officer Gunther Riedel went to appellant's residence in Sacramento and conducted a search of the premises. (R.T. 310-312, 397.) Off. Riedel testified that during the search he found a green and yellow baseball cap, blue and black suede jeans with patches, and an Oakland Raiders jacket. (R.T. 314.) He did not find any Raiders hat. (R.T. 316.) He also found 37 rounds of .25 caliber bullets. (R.T. 313.)

Officer Bryant Jones of the San Jose Police Department testified that he was able to lift a latent print from the Volkswagen door handle. (R.T. 322-323.) A Burger King cup and malt liquor bottle were also seized from the Dodge Colt; no attempts were made to lift latent fingerprints from them. (R.T. 326-327, 331-332.)

Frank Hursh, a Fingerprint Examiner with the San Jose Police Department, testified that the prints lifted from the Volkswagen passenger's side door handle matched a known right thumb print of Ricky Nelson. (R.T. 369.) However, none of the 28 latent prints that were submitted to him for analysis matched those of appellant.

10

(R.T. 371-372.)   Hursh further testified that he never received Watkins' known prints in order to make a comparison.   (R.T. 373.)

   D.   Appellant's Post-Arrest Statement To Detective Barker

   Det. Barker further testified that on March 20, 1992, he conducted a taped interview with appellant.   (R.T. 405.)   Det. Barker admitted that during the interview he told appellant a number of things that he knew were not true, including a false claim that the police had found appellant's fingerprints on the Volkswagen and that the police had obtained a photograph of him from a bank.   (R.T. 408-409.)   During the taped interview, appellant gave the following statement regarding his activities on March 10, 1992:

   Appellant said he was asleep in the front seat of the Colt at the Town and Country parking lot.   (Exhibit 36, pp. 11, 21.)   At that time, Nelson and Watkins left appellant alone in the car saying that they would be right back.   (Exh. 36, p. 21.)   Appellant repeatedly maintained that he had never entered Ms. Guthrie's Volkswagen, even after being told by Det. Barker that his fingerprints had been found on it.   (Exh. 36, pps. 5, 6, 9, 10.)

   When Watkins and Nelson returned to the Colt with Ms. Guthrie, appellant was told to get in the back with her.   (Exh. 36, p. 11.) Watkins then drove the car from San Jose to Oakland, and they stopped at a Burger King and gas station along the way.   (Exh. 36, p. 11.)   Appellant acknowledged that Ms. Guthrie had orally copulated him, and said that this was consensual.   (Exh. 36, p. 16.)

   Appellant began driving after they got to Oakland because he was more familiar with the area than the others.   (Exh. 36, p. 13.)

11

you appeal from the conviction, sentence, or commitment?  [X] Yes.  [ ] No.  If yes, give the following information:

a  Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
_CAL. COURT OF APPEAL - SIXTH DISTRICT_

b  Result: _Reversal w/cts 2 3.5 USE ENHANCEMENTS_    c. Date of decision: _JUNE 17, 1994_

d  Case number or citation of opinion, if known: _H010667_

e  Issues raised: (1) _ABUSE OF DISCRETION [AND] IMPROPER JURY INSTRUCTIONS_

(2) _____

(3) _____

f  Were you represented by counsel on appeal?  [X] Yes.  [ ] No.  If yes, state the attorney's name and address, if known:

_ALEX REISMAN, 861 BRYANT ST., SAN FRANCISCO, CA. 94103_

Did you seek review in the California Supreme Court?  [ ] Yes.  [X] No.  If yes, give the following information:

a  Result: _____    b. Date of decision: _____

c  Case number or citation of opinion, if known: _____

d  Issues raised:  (1) _____

(2) _____

(3) _____

0. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal.
_ISSUE IS COLLATERAL.._

1. Administrative Review:

a  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See In re Muszalski (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

_N/A_

b  Did you seek the highest level of administrative review available?  [ ] Yes.  [ ] No.
_Attach documents that show you have exhausted your administrative remedies._

MC-275 (Rev. January 1 1999)

PETITION FOR WRIT OF HABEAS CORPUS

Page five of six

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?    [X] Yes. If yes, continue with number 13.    [ ] No. If no, skip to number 15.

13. a. (1) Name of court: SUPERIOR COURT OF SANTA CLARA COUNTY

    (2) Nature of proceeding (for example, "habeas corpus petition"): HABEAS CORPUS

    (3) Issues raised: (a) IAC - TRIAL AND APPELLATE COUNSEL, INSUFFICIENCY OF

    (b) EVIDENCE

    (4) Result (Attach order or explain why unavailable): DENIED SEE APPENDIX "A"

    (5) Date of decision: FEB. 17, 2004

  b. (1) Name of court: COURT OF APPEALS - SIXTH DISTRICT

    (2) Nature of proceeding: HABEAS CORPUS

    (3) Issues raised: (a) SUPERIOR COURTS REVIEW ON HABEAS, IAC, AND INSUFFICIENCY

    (b) OF EVIDENCE

    (4) Result (Attach order or explain why unavailable): $ DENIED SEE APPENDIX "B"

    (5) Date of decision: JUNE 14, 2004

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page. SEE APPENDIX "C" (et. seq.)

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result.

PLEASE REFER TO APPENDIX "A"

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
KNOWLEDGE OF THE RECENT CASE CITINGS HEREIN. (NEW LAW)

16. Are you presently represented by counsel?    [ ] Yes.    [X] No. If yes, state the attorney's name and address, if known.

17. Do you have any petition, appeal, or other matter pending in any court?    [ ] Yes.    [ ] No. If yes, explain.
YES, SEEKING FEDERAL REVIEW OF THE ISSUES IN QUESTIONS 12-14 ABOVE

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court.
N/A

I, the undersigned, say I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: JUNE 24, 2007    ▶ Edward E. Motley
                       (SIGNATURE OF PETITIONER)

BEGINING OF APPENDIX "A" - "D"

APPENDIX - "A"

IN RESPONSE TO THE AMMENDED PETITION,
WHICH IS NOT APART OF THIS RECORD.

ATTACHMENT

FILED

FEB 17 2004

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
By_____
DEPUTY

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

In re                              )
                                   )    No.: 155474
    EDWARD E. MOTLEY,          )    **FINAL ORDER**
                                   )
On Habeas Corpus                   )
                                   )

EDWARD E. MOTLEY presented this Court with a petition for a writ of habeas corpus in which he claims that trial and appellate counsels were ineffective, and there was insufficient evidence for his conviction. The People have filed their Return, and Petitioner has filed his Traverse. An evidentiary hearing was held on January 8, 2004.

This Court's order to show cause revolved around his counsel's alleged failure to call Ricky Nelson as a witness and the alleged failure to compare the fingerprints of Thomas Watkins with the fingerprints lifted from the victim's vehicle. Petitioner asserted that Ricky Nelson's testimony and the fingerprint matching would show that Watkins was the person who initially abducted the victim at gunpoint. Petitioner alleged that this evidence would have indicated that there was insufficient evidence to convict him on count one of his conviction

1

1   as a principal to the crime of robbery for kidnaping with an enhancement

2   for personal use of a firearm.

3        However, based upon the testimony given at the evidentiary hearing,

4   it is apparent that Thomas Watkin's fingerprints were, contrary to

5   Petitioner original claim, actually compared with the latent prints

6   taken from the victim's vehicle. However, none of the prints matched

7   either Petitioner or Watkins. As a result, Petitioner has failed to

8   prove that Watkins was the person who abducted the victim at gunpoint.

9        In addition, no error can be assigned to trial counsel's alleged

10  failure to call Ricky Nelson as a witness at trial. As trial counsel and

11  his investigator made clear, Nelson's statements in his interviews

12  conflicted and changed on several key issues, including who was

13  initially present when the victim was abducted. As a result,

14  Petitioner's defense counsel made a proper tactical decision to not call

15  Nelson as a witness due to his inconsistent statements. (People v. Bolin

16  (1998) 18 Cal.4th 297, 334.)

17       Accordingly, Petitioner has failed to meet his burden to show that

18  he had ineffective assistance of counsel at his trial or on appeal.

19

20       The petition is DENIED.

21

22  DATED: February 10, 2004

        ALFONSO FERNANDEZ
        JUDGE OF THE SUPERIOR COURT

23  cc:  Petitioner
24       District Attorney (Ron Rico)
         Research
25       File

26

27

28



2

APPENDIX "B"

COURT OF APPEALS ORDER on HABEAS

*Motley, Edward E.*

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

**FILED**

MAR 9 - 2005

Court of Appeal - Sixth App. Dist.
MICHAEL J. YERLY, Clerk

BY _____ DEPUTY

| | |
|---|---|
| In re EDWARD E. MOTLEY,<br><br>on Habeas Corpus. | H028355<br>(Santa Clara County<br>Super. Ct. No. 155474) |

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Premo, Acting P.J., and Mihara, J., participated in this decision.)

Dated ___MAR 9 - 2005___    ___**PREMO, J.**___ Acting P.J.

APPENDIX "C"

DENIAL OF PETITION FOR REVIEW

OF HABEAS.

S135907

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

---

In re EDWARD MOTLEY on Habeas Corpus

---

Petition for writ of habeas corpus is DENIED.  (See *In re Robbins* (1998) 18 Cal.4th 770, 780; *In re Clark* (1993) 5 Cal.4th 750.)

SUPREME COURT
**FILED**

MAY 2 4 2006

Frederick K. Ohlrich Clerk

DEPUTY

GEORGE

Chief Justice

APPENDIX " D "
SANTA CLARA SUPERIOR COURT'S
DENIAL OF THE ISSUES HEREIN

1

2    **SUPERIOR COURT OF CALIFORNIA**

3    COUNTY OF SANTA CLARA

**FILED**

MAR 2 9 2007

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
By _____ Deputy

6    In re

    No.: 155474

7    EDWARD E. MOTLEY,

8    On Habeas Corpus

    ORDER

9

10    Mr. MOTLEY (hereinafter Petitioner,) has filed a habeas corpus

11    petition in which he seeks relief based on the United States Supreme

12    Court's holding, in *Cunningham v. California* (2007) 127 S.Ct. 856,

13    that *Blakely v. Washington* (2004) 542 U.S. 296 applies to

14    California's sentencing practices. However Petitioner's case was

15    final prior to June 24, 2004, (the date *Blakely, supra,* was decided),

16    and the *Blakely* rule is not retroactive. (See *In re Consiglio* (2005)

17    128 Cal.App.4th 511, *People v. Amons* (2005) 125 Cal.App.4th 855, 864-

18    865, and *Schardt v. Payne* (2005, 9th Circuit) 414 F.3d 1025.)

19    Petitioner's case was also final prior to the date of the decision in

20    *Apprendi v. New Jersey* (2000) 530 U.S. 466, which provided the

21    rationale for the *Blakely* rule. Accordingly, all requested relief

22    or action is denied.

23

24    DATED: March 15 , 2007

    _____
    LINDA R. CONDRON
    JUDGE OF THE SUPERIOR COURT

26    cc:  Petitioner
        District Attorney
27       Research (3-13A)
        CJIC

28

1

APPENDIX "E"
COURT OF APPEALS DENIAL
OF THE ISSUES HEREIN

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

Court of Appeal · Sixth App. Dist.
**F I L E D**

JUL 1 3 2007

MICHAEL J. YERLY, Clerk

By _____
DEPUTY

In re EDWARD E. MOTLEY,

    on Habeas Corpus.

H031720
(Santa Clara County
 Super. Ct. No. 155474)

BY THE COURT:

    The petition for writ of habeas corpus is denied.

    (Mihara, Acting P.J., and McAdams, J., participated in this decision.)

Dated ___**JUL 1 3 2007**___    ___**MIHARA, J.**___ Acting P.J.

EXHIBIT

# EXHIBIT . O
CAL - SUPREME COURT DENIAL

EXHIBIT ___

EXHIBIT

S155192

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

In re EDWARD E. MOTLEY on Habeas Corpus

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

JAN 2 3 2008

Frederick K. Ohlrich Clerk

_____
Deputy

_____
**GEORGE**
Chief Justice

# APPENDIX A
## COURT RULINGS. . .

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

FILED

MAR 9 - 2005

Court of Appeal - Sixth App. Dist.
MICHAEL J. YERLY, Clerk
BY _____
                                    DEPUTY

In re EDWARD E. MOTLEY,

    on Habeas Corpus.

H028355
(Santa Clara County
 Super. Ct. No. 155474)

BY THE COURT:

    The petition for writ of habeas corpus is denied.

(Premo, Acting P.J., and Mihara, J., participated in this decision.)

Dated    MAR 9 - 2005    _____ Acting P.J.
                          PREMO, J.

Court of Appeal, Sixth Appellate District - No. H028355
**S132645**

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

In re EDWARD E. MOTLEY on Habeas Corpus

Petition for review DENIED.

**SUPREME COURT**
**F I L E D**

JUN - 8 2005

**Frederick K. Ohlrich Clerk**

DEPUTY

GEORGE
Chief Justice

# PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY

(Fed. R. Civ.P.5; 28 U.S.C. § 1746)

I, _Edward Eugene Motley_                , declare:
I am over 18 years of age and a party to this action. I am a resident of
_CCI - TEHACHAPI_                         Prison,
in the county of _KERN_        , State of California. My prison address is:
_P.O. BOX - 8 1902, TEHACHAPI, CA. 93581._        .

On _FEBRUARY 27, 2008_              , I served the attached:
_WRIT OF HABEAS CORPUS W/ EXHIBITS_

on the parties herein by placing true and correct copies there of, enclosed in a sealed envelope,
with postage thereon fully paid, in the United States Mail in a deposit box so provided at the
above-named correctional institution in which I am currently confined. The envelope was
addressed as follows:

_UNITED STATES COURT_
_HOUSE - FEDERAL BUILDING_
_450 GOLDEN GATE AVE._
_SAN FRANCISCO, CA. 94102_

I declare under penalty of perjury under the laws of the United States of America that the
forgoing is true and correct.

Executed on _2/27/08_                _Edward E. Motley_
            (Date)                       (Declarant signature)